277 So.2d 509 (1973)
Joseph V. PIERRE
v.
GULF JANITORIAL SERVICES OF BATON ROUGE, INC., and Safeco Insurance Company.
No. 9302.
Court of Appeal of Louisiana, First Circuit.
April 9, 1973.
Rehearing Denied May 29, 1973.
Writ Refused June 28, 1973.
Richard Burton, Burton & Roberts, Baton Rouge, for appellant.
James E. Moore, Franklin, Moore, Beychock & Cooper, Baton Rouge, for appellees.
Before SARTAIN, BLANCHE and WATSON, JJ.
JACK C. WATSON, Judge ad hoc.
This is a workmen's compensation case. Joseph V. Pierre filed suit to recover benefits from Gulf Janitorial Service of Baton Rouge, Inc. for the injuries he received in a truck accident which occurred on Louisiana Highway 30 on October 4, 1969. Safeco Insurance Company is the compensation insurer of Gulf Janitorial. The trial court rendered judgment in favor of defendants and against the plaintiff stating: "the plaintiff has failed to show by a preponderance of the evidence that he was within the course and scope of his employment at the time the accident occurred." Plaintiff has appealed. There is no question that plaintiff's employment was hazardous or that he was totally and permanently disabled within the contemplation of the Louisiana Workmen's Compensation *510 Act, LSA-R.S. 23:1021 et seq. The only issue presented in this appeal is whether plaintiff, Joseph V. Pierre, was in the course and scope of his employment at the time of the accident.
Plaintiff, a police juror in Ascension Parish, is a resident of Darrow, Louisiana. At the time of the accident, he was a full-time employee of the U. S. Public Health Service Hospital in Carville and a part-time employee of Gulf Janitorial Service whose home office is located in Baton Rouge. His duties with the latter were those of a general supervisor over twelve to fourteen people. He owned a 1965 model GMC pick-up truck for the use of which he was paid approximately $25 a week by Gulf Janitorial. According to plaintiff, he used the truck "To haul materials back and forth and go from plant to plant." (TR. 108). Plaintiff testified that he worked for Gulf Janitorial in Ascension Parish and portions of St. James. He also testified that he sometimes went to Baton Rouge to pick up supplies and that he was in the course of doing this at the time of the accident. He further testified that he had planned to do a "one time job" at the Little DuPont plant during this trip. Prior to leaving for Baton Rouge on the Saturday of the accident, he worked at Carville from 6:30 a. m. until 9:30 a. m., getting off early for the Baton Rouge trip. Plaintiff testified that he had no reason for going to Baton Rouge other than his job with Gulf Janitorial and that he did not know the Baton Rouge office was closed on Saturdays. He testified that he had been to the office in Baton Rouge twice on Saturdays for supervisors' meetings during his two and a half years with the company.
William R. Edwards, the Baton Rouge office manager for Gulf Janitorial, testified that the office was closed on the Saturday of the accident, but that he was on duty to answer the telephone. He stated that someone was always on call and that he worked at the office on Saturday about once a month. He testified that Joseph Pierre had sometimes picked up supplies at their warehouse in Baton Rouge during the week.
Robert A. Lee, district manager for Gulf Janitorial, testified that, at the time of the accident, janitorial work at the Little DuPont plant was under plaintiff's supervision. He testified that plaintiff received $55.00 every two weeks as travel pay. He further testified that all the supervisors, including plaintiff, received two hours' pay on Saturday and two hours' pay on Sunday, which he described first as a "bonus" and then as pay for "paper work, preparing their payroll". (TR. 200).
Joe R. Raulins, a district supervisor for Gulf Janitorial, testified that plaintiff at nine o'clock on the morning of the accident had on pants, a tie, shirt and shoes. He stated that plaintiff had come by the Baton Rouge office on previous occasions to get supplies but denied that he had ever made the trip for that specific purpose.
Mrs. Pierre testified as a rebuttal witness and stated that she had sometimes ridden with plaintiff to Baton Rouge when he went to pick up supplies at Gulf Janitorial. She also testified that he had "empties" and mops and "all of that" in the truck on the day of the accident.
The trial court noted what it described as several inconsistencies in plaintiff's testimony. First, plaintiff testified he talked to Herman Nicholson (also called Nicholas at various points in the record) Friday night about helping with the "one-time job" at Little DuPont that Saturday morning and Nicholson did not confirm this. However, a careful reading of plaintiff's testimony shows that what he told Nicholson on Friday was that he would call him on Saturday, the relevant testimony being as follows:
"A No, I told him I was going to call him when I got back.
"Q Bank from where?
"A Baton Rouge.
"Q And you were going to ask him to help you do that job?
"A One time job.

*511 "Q You didn't know whether it was going to be a one man job or not?
"A I was going to call him when I got back.
"Q Why were you going to call him when you got back?
"A To come and help me do that job.
"Q Why couldn't you tell him that the evening before? Didn't you talk to him the evening before?
"A I had to ask my supervisor to get off. I didn't know if I could get off or not.
"Q But, you did intend to talk to Mr. Nicholas about helping you do that job?
"A I was going to call him when I got back." (TR., page 143)
Hermann Nicholson, one of the employees of Gulf Janitorial, testified that he saw plaintiff at the Gulf refinery on the Friday night before the accident. He further testified that plaintiff asked him to put some plastic bottles and swivel (mop) heads in the back of plaintiff's truck, so he could haul them over to Baton Rouge the next day. He also said in regard to plaintiff: "he come to us to find out who would want to work weekends or whatnot". While his testimony did not confirm plaintiff's in regard to a possible telephone call on Saturday, neither did it contradict it.
Second, the trial court said Pierre denied that Joe R. Raulins was his superior, although all the evidence indicated that he was. Actually, the evidence shows that plaintiff had a free hand in the area he supervised and might have considered himself not under Raulins' authority.
Third, plaintiff testified that he didn't know the Gulf Janitorial warehouse was closed on Saturdays, but all the other testimony indicated that the warehouse was always closed on Saturday. This does not render plaintiff's testimony inconsistent. There was no testimony that plaintiff knew the warehouse was closed on Saturday. Plaintiff had been to supervisors' meetings at the Gulf Janitorial offices on Saturday at least twice and might well have assumed the office was open. In any event, if the office had been closed when he arrived, it was admitted that there was someone on call who could have opened it up for him.
None of the foregoing points seem of any great significance.
Plaintiff is unquestionably a hard worker; one who, prior to his accident, held two jobs for a total of thirteen working hours a day. To be elected a police juror, he must have a good reputation in his community. His testimony cannot be completely disregarded because of a few minor quibbles. We believe that the circumstances support plaintiff's contention that he was going to Baton Rouge to get supplies. His route was one that would have taken him to Gulf Janitorial's office. There were cleaning supplies in the truck, and the policy of Gulf Janitorial was to exchange such items as a full bottle for an empty and a new mop for a used. It is significant that plaintiff was paid for two hours' work each Saturday and that he received a travel allowance for the use of his car.
Plaintiff's superior, Raulins, was furnished with a company truck. Obviously, if Raulins had met with an accident going to Baton Rouge for supplies, he would have been eligible for workmen's compensation. It does not seem reasonable that plaintiff, doing the same job, which Raulins described as a "favor to me" and a benefit "for the plant" should not be eligible for the same compensation. If plaintiff had been driving Gulf Janitorial's truck, a presumption would arise that he was in their employ at the time of the accident. R.S. 23:1044; Stull v. Russo, 85 So.2d 112 (La.App. 1 Cir. 1955); Allen v. Freiler Industries, Inc., 246 So.2d 327 (La.App. 1 Cir. 1971). Since it is immaterial whether the employer furnishes the actual facilities for transportation or makes a monetary allowance, Callihan v. Fireman's *512 Fund Indemnity Company, 110 So.2d 758 (La.App. Or. 1959); Williams v. Travelers Ins. Co. of Hartford, Conn., 19 So.2d 586 (La.App. 1 Cir. 1944), writ refused, the same presumption is applicable to the present case.
It must be remembered that a liberal construction is given to the term "course and scope of employment" in workmen's compensation cases. Harris v. Hymel Store Co., 200 So.2d 84 (La.App. 1 Cir. 1967), writ refused, 251 La. 47, 202 So.2d 657.
Plaintiff had no fixed place of employment or regular hours; his travel by automobile to a series of work locations was a required element of his employment. DeMaggio v. United Mills Corporation, 252 So.2d 530 (La.App. 4 Cir. 1971; Gautreaux v. Life Insurance Company of Georgia, 256 So.2d 832 (La.App. 3 Cir. 1972). There is no question that plaintiff had a wide latitude in carrying out his duties. Even if it had been shown, and it was not, that he had another purpose in his trip to Baton Rouge, he could still have been furthering his employer's interest. Johnson v. Wallace Industrial Constructors, 224 So.2d 31 (La.App. 1 Cir. 1969), writ refused, 254 La. 782, 226 So.2d 771. Plaintiff's trip was one which could reasonably be contemplated within the terms of his employment as one he would make in the interest of his employer's business. Boutte v. Mudd Separators Inc., 236 So.2d 906 (La.App. 3 Cir. 1970), writ refused, 256 La. 894, 240 So.2d 231.
Even if going to Baton Rouge for supplies was not a duty demanded of plaintiff by his employer, it was a task he had performed in the past and certainly incidental to his employment. Hull v. Liberty Mutual Ins. Co., 236 So.2d 847 (La.App. 1 Cir. 1970); writ refused, 256 La. 862, 239 So. 2d 361. Taking all the surrounding circumstances into consideration, we feel that plaintiff proved it was more probable than not that he was in the course and scope of his employment at the time of the accident. Certainly, defendants did not produce evidence sufficient to rebut the presumption that he was so engaged.
Defendants' attorney argues that plaintiff could not have left his job at Carville to do something for Gulf, because the Gulf job paid less per hour. However, as plaintiff testified, his job at Carville entitled him to a certain amount of leave, for which he was undoubtedly paid.
Much is also made of plaintiff having on a tie at the time of the accident. Changing from hospital garb to a shirt and tie to go to the city indicates nothing except that plaintiff wished to present a neat appearance at the Gulf Janitorial offices. He was obviously a man who took pride in his supervisory status. In fact, he hated to admit having a superior and testified that "I was probably one of the highest paid men at the time they had".
In evaluating plaintiff's testimony, it must be remembered that he suffered severe trauma on October 4, 1969. His medical bills were stipulated as amounting to $13,258.76. Trial was not held until March 14, 1972. Despite his serious injuries and the long interval between the accident and trial, plaintiff's testimony is, in close analysis, uncontradicted. Perhaps the trial court felt there were inconsistencies, but a situation was not presented where the trier of fact heard two conflicting stories and had to choose the true from the false.
Considering the plaintiff's testimony; his wife's corroboration of the cleaning supplies in his truck; mention of these supplies by other witnesses; the witness Nicholson's corroboration of the nature and purpose of plaintiff's trip to Baton Rouge that Saturday; the fact that plaintiff was paid for two hours' work on Saturday; the undisputed fact that plaintiff was on a route which would have taken him to his employer's place of business; *513 and the fact that plaintiff was driving a truck the use of which was paid for by his employer, we conclude that plaintiff was in the course and scope of his employment at the time of the accident. Since we feel that the trial judge was in error in holding that plaintiff had not proved that the accident occurred in the course of his employment, we reverse. Goree v. Atlantic Oil Producing Company, 2 La.App. 558.
There appears no question that plaintiff suffered severe and disabling injuries as a result of the accident. Dr. J. G. Nasca outlined the plaintiff's treatment and the various procedures carried out. The defendants do not argue the question of disability. We conclude that plaintiff is totally and permanently disabled.
Plaintiff's payroll receipts were introduced into evidence and show that he is entitled to the maximum benefits in effect at the time of the accident which would be $45.00 per week (LSA-R.S. 23:1202) and 500 weeks (LSA-R.S. 23:1221).
In view of the serious dispute on the question of course and scope of employment, there is no occasion to assess penalties or attorney's fees.
Therefore it is ordered, adjudged and decreed that Joseph V. Pierre have judgment against Gulf Janitorial Service of Baton Rouge, Inc. and Safeco Insurance Company, jointly and in solido, at the rate of $45.00 per week beginning October 4, 1969, for such period as he continues to be totally and permanently disabled, not to exceed 500 weeks together with legal interest from due dates until paid and for medical expenses according to law.
Costs of this appeal as well as costs in the trial court, relating only to this case, are taxed against Gulf Janitorial Service of Baton Rouge, Inc. and Safeco Insurance Company.
Reversed and rendered.