299 So.2d 835 (1974)
Steven TRAHAN
v.
GIRARD PLUMBING & SPRINKLER CO. et al.
No. 5963.
Court of Appeal of Louisiana, Fourth Circuit.
July 3, 1974.
Rehearings Denied September 12, 1974.
Writs Refused November 15, 1974.
*836 Plotkin & Bradley, Steven R. Plotkin, David Gertler, New Orleans, Brown & Hull, Elliot E. Brown, Harry R. Hull, Jr., Metairie, for Steven Trahan, plaintiff-appellant.
Christovich & Kearney, W. K. Christovich, New Orleans, for Milton H. Girard, D/B/A Girard Plumbing & Sprinkler Co., and Continental Ins. Co., defendants-appellees.
Morphy, Freeman, Holbrook & Faulkner, A. D. Freeman, New Orleans, for Robert R. Walker, defendant-appellee.
Gerald J. Gallinghouse, U. S. Atty., Ronald A. Fonseca, Asst. U. S. Atty., for United States, intervenor-appellant.
Before REDMANN and STOULIG, JJ., and FLEMING, J. Pro Tem.
STOULIG, Judge.
Plaintiff, Steven Trahan, received brain injuries that reduced him to a mental incompetent caused by his ejection from a moving truck on the Eastex Freeway in Houston, Texas. He filed a tort action against Milton H. Girard, doing business as Girard Plumbing & Sprinkler Co., his employer, as owner of the truck; Continental Insurance Company, Girard's liability insurer; and Robert R. Walker, a coemployee driving the truck with the owner's permission. It was alleged the driver's negligence was the proximate cause of the accident. The trial court dismissed plaintiff's suit against all three defendants upon concluding plaintiff's exclusive remedy was provided by the Louisiana Workmen's Compensation Act. Plaintiff has appealed.
Trahan had been sent to Houston by his employer to render specialized service in the installation of a sprinkler system and this accident occurred more than three hours after he left the jobsite. The judgment of the trial court is based on a finding that plaintiff's injury was sustained in an accident arising out of and in the scope of his employment. In written reasons for judgment, the trial court advances two theories to support this conclusion, namely, (1) plaintiff was within the course and scope of his employment the entire time he was in Houston because his only reason for being there was to perform a job for his employer; and/or (2) plaintiff received 50 cents per hour, part of which was to cover his transportation to and from work, and this brought him within the exception to the jurisprudential general rule that an employee injured while traveling to or from his job is not within the course and scope of his employment. The exception comes into play if the employer furnishes a physical conveyance or provides a monetary allowance for travel expenses as an incident to the contract of employment. See Pierre v. Gulf Janitorial Serv. of Baton Rouge, Inc., 277 So.2d 509 (La.App. 1st Cir. 1973); and Callihan v. Fireman's Fund Indemnity Company, 110 So.2d 758 (La.App.Orl.1959).
In reviewing the facts bearing upon the issue of whether the plaintiff was acting in the course and scope of his employment at the time of the injury, we note only the two defendantsGirard and Walker testified.[1] According to these witnesses at the time Girard assigned plaintiff to the Houston job, he had been in Girard's employ for 11 months and, through rapid advancement, had reached a wage rate of $4 *837 per hour. In addition to his base pay, Trahan was to be paid an additional 50 cents per hour to cover lunch and transportation expenses to and from the jobsite. His roundtrip air fare, motel bill, and costs of his morning and evening meals were to be paid by his employer. Although plaintiff was under Walker's supervision while in Houston, Walker had no voice whatsoever in the contract of employment, specifically in fixing plaintiff's salary or expense allowance.
When plaintiff arrived in Houston, Walker suggested that plaintiff check into the same motel where he was staying, pointing out that Trahan could ride to and from the jobsite in a company truck at Walker's disposal. Girard, who knew nothing of this transportation arrangement, testified it was immaterial to him where plaintiff stayed, how he got to work, and he denied he was benefited by Walker's driving plaintiff to the job. He stated he had no interest whatsoever in plaintiff's riding in his truck and would not have objected had he known of the arrangement.
On the day of the accident (November 30, 1967), plaintiff and Walker worked from 7 a. m. to 6 or 6:30 p. m. Plaintiff was compensated only for each hour of work on the jobsite. There was no travel time allowance.
After leaving the job, Walker, accompanied by plaintiff, drove to a nearby cafe where they joined a group of six to eight people for several beers. (Walker stated he consumed two or two and one-half beers and everyone else had six or seven.) Walker further testified he, the plaintiff and James Ark, a casual drinking acquaintance, left the cafe at 8 p. m., intending to drive directly to their motel and also to drop Ark off at a point near his own lodging which was on their way. According to Walker, the jobsite was one-half mile from the bar and approximately 12 to 16 miles from the motel. The parties left the cafe in the truck with Walker driving, Ark in the middle, and the plaintiff sitting next to the right front door. As they proceeded on the Eastex Freeway, the truck entered the right branch of a Y in the road, and at some point in the beginning of this fork, Walker realized he was traveling on a wrong freeway exit. He then maneuvered the truck with the idea of reentering the freeway and, as he executed this movement, Ark and plaintiff were ejected from the front seat of the truck into the roadway while the vehicle was in motion.[2]
Based on these facts, we hold plaintiff was not within the course and scope of his employment when he was injured either by virtue of the travel expense exception to the general rule or the theory that the job assignment was of such a nature as to place him within the course and scope of his employment for 24 hours a day during the entire time he was in Houston.
As to the transportation expense argument, we cannot conclude plaintiff was being tranported by his employer as an incident to or a concomitant of his employment when he was injured. The accident happened between 9:30 p. m. and 10 p. m., at least three hours after plaintiff left the jobsite. (It is obvious that the trio did not leave the cafe until after 9 p. m. despite Walker's assertion to the contrary.) His employer affirmatively established plaintiff's presence in the company truck at the time of his injury was not incidental to the contract of employment. By his own testimony he was unaware plaintiff was being thus transported and he had no interest in, or derived no benefit from, plaintiff's riding in the company truck. Perhaps the payment of transportation would have brought this case within exclusive workmen's compensation coverage had the injury occurred between the jobsite and the cafe or between the jobsite and the motel had plaintiff returned directly to the motel after leaving the job.
*838 In Callihan v. Fireman's Fund Indemnity Company, supra, one of the more clear and concise decisions on the travel expense exception, the court emphasized that the employer therein was obligated by a union contract to furnish travel expenses and to pay the employee for travel time. In holding the accident occurred in the course and scope of employment although the workman had left his employer's plant in his own vehicle, the court emphasized plaintiff was still being paid for travel time under the employment contract when he was injured. While compensation coverage is not limited to employees receiving pay for travel time, the more recent decisions have not abolished the requirement that the employee receiving a travel expense payment be either driving to, returning from, or traveling on a mission for the employer at the time of the injury. See Pierre v. Gulf Janitorial Serv. of Baton Rouge, Inc., supra; Welch v. Travelers Insurance Company, 225 So.2d 623 (La.App. 1st Cir. 1969); and Gardner v. Industrial Indemnity Company, 212 So.2d 452 (La.App. 1st Cir. 1968). In Gardner, the court noted the phrase "incident to or concomitant of the employment" has been interpreted to mean the employer must derive some benefit or have some interest in the actual transportation.
In the instant case, although travel expense was paid, we find the transportation from which the injury resulted was not serving any purpose of the employer and was not connected in any way with the employment contract. Plaintiff was a passenger in his employer's truck through the generosity of his supervisor, who, at the time of the injury, was gratuitously transporting him to his motel from a cafe where they had been relaxing for several hours after the workday ended.
We also reject the second theory upon which the trial court dismissed this tort action. We would not expand course and scope of employment to include every hour of every day plaintiff spent in Houston. In reaching a different result, the trial judge cited four cases, all of which we find distinguishable. Rosenquist v. New Amsterdam Casualty Company, 78 So.2d 225 (La.App. Orl.1955), concerned injuries to a lady employed by a department store to operate a clothing store and beauty salon aboard ship on a 10-day cruise. She was to be available or on call at all times throughout the duration of the cruise, but when time permitted, she could enjoy the privileges afforded paying passengers. While arising after sunbathing on the deck, she slipped and injured herself. The court pointed out the employee was at the site of her employment throughout the entire cruise. Among the distinctions between Rosenquist and the instant case are that Trahan was not on call on a 24-hour basis and left the jobsite at the end of each workday. We do not think plaintiff's presence in the City of Houston calls for our concluding that while there, he was on the job at all times.
In Boutte v. Mudd Separators, Inc., 236 So.2d 906 (La.App. 3d Cir. 1970), the court held a workman returning home from a party with his wife in a company truck after having overimbibed was in the course and scope of his employment. The court reasoned that plaintiff was on call 24 hours per day, and in driving home from the party, was shortening the distance he would be required to drive in the morning. Because he was on call round-the-clock the court further reasoned he was within the course and scope of his employment. The benefit derived by his employer was the saving of travel time the following morning. In rationalizing that plaintiff into compensation coverage, we note the court found it necessary to place him "on the job" at the time, performing an act from which his employer would derive a benefit.
We do not think Lavier v. Maclellan, 247 So.2d 921 (La.App. 4th Cir. 1971), the third case alluded to in written reasons, is controlling in the instant matter. It simply holds a tort claim could not be dismissed by summary judgment because plaintiff at the time of injury was on his employer's *839 premises. It afforded the employee an opportunity to prove under which circumstances his injury occurred.
The fourth case, Johnson v. Wallace Industrial Constructors, 224 So.2d 31 (La. App. 1st Cir. 1969), involved injury to an employee killed while returning from a combination business-pleasure trip in New Orleans. The employee had been sent to New Orleans for a conference and after it ended, he engaged in personal entertainment or activity. He was killed at a point somewhere between New Orleans and his jobsite and/or home. The court reasoned that he was either traveling to his job or returning home at the time he was killed. It further noted that some occupations are of such a nature that the employee can be furthering the interest of his employer while engaging in personal activities. In this respect, we find Johnson is distinguishable from the instant case. Trahan was to work on a job installing an alarm device in a sprinkler system for a given number of hours per day. Once he left the jobsite his activities neither benefited his employer or were of any interest to him. This removes the instant case from the Johnson rationale.
In summary we do not find the cited cases authority for the proposition that plaintiff was acting within the course and scope of his employment at the time he was injured, and we reverse the ruling that his exclusive remedy is under the Louisiana Workmen's Compensation law.
We turn to the merits of plaintiff's tort claim. Before setting forth the respective allegations and evidence adduced in this connection, we note Louisiana's well-settled doctrine of lex loci delicti became unsettled while this appeal was pending. At the trial, all counsel probably anticipated Texas substantive law would be applied, and properly so. This prospect created an anomalous situation for both plaintiff and defendants because Texas has a law prohibiting a guest passenger from suing his driver. (We need not explore the subtleties thereof.) Plaintiff did not wish to be an employee under Louisiana law because of the exclusive nature of our compensation act, and yet he had to be more than a guest to prevail in a negligence action in Texas. Defendants, of course, wished to place plaintiff within the course and scope of employment when he was injured. But had they proved an employer-employee relationship sufficient to remove plaintiff from guest status under Texas law, but insufficient to bring him within the course and scope of his employment under Louisiana law, they would in effect help plaintiff prove his case. However, Jagers v. Royal Indemnity Company, La., 276 So.2d 309 (1973), intervened to solve plaintiff's dilemma. That decision enunciates the "false conflict" exception to the lex loci delicti rule. Simply stated it is that where only a single state has an interest in the outcome of a suit involving its own domiciliaries, the substantive law of the place of the tort will not be applied. Jagers involves a claim by a guest passenger against her son for injuries incurred in a Mississippi accident while both, although domiciliaries of Louisiana, were temporarily residing in Mississippi. The Supreme Court held Louisiana law would be applied and in so doing specifically overruled Johnson v. St. Paul Mercury Insurance Company, 256 La. 289, 236 So.2d 216 (1970).
This case comes squarely within the false conflict exception. All litigants are Louisiana domiciliaries involved in a law-suit arising from an accident that occurred while Walker and Trahan were in Texas on a temporary basis. Applying the Jagers formula, there is no conflict based on true diversity of citizenship nor can we conclude the State of Texas would have any more interest in the outcome of this cause than did the State of Mississippi in the Jagers decision. Louisiana substantive law applies.
Plaintiff attributes the accident to two independent negligent acts of defendant driver that concurred to produce his injury. *840 One was the maintenance of a defective lock on the right door of the pickup truck that yielded to a pressure which a properly functioning lock would not have; and the second was swerving sharply to reenter the freeway after entering the wrong exit. This driving maneuver created centrifugal force sufficient to throw both passengers' weight against the door that opened only because the lock was not functioning properly.
We find the lock was defective. Walker admitted knowledge of this condition at least 10 days before the accident when the door opened as he was driving another person from the Houston airport. He explained the defect was such that slamming the door hard would release the lock from the first catch and it would only be partially closed, secured solely by the safety latch.
The Houston police officer who conducted the accident investigation, L. J. Chance, stated his test of the door indicated the right door would close tight; however, one normal pull would spring the door from the second notch and a second pull would open it completely. The expert testimony tendered by the defendant to the effect the lock was inspected, was never repaired and was not defective is not persuasive in view of the contradictory testimony of an independent witness and one of the defendants.
As to the facts immediately surrounding the accident, we conclude it occurred in this manner: Walker, plaintiff and Ark left the cafe after 9 p. m. When Walker reached a point on the freeway that branched in two directions, he entered the wrong exit of the Y-shaped highway at a speed of between 40 and 45 miles per hour. Immediately realizing his mistake and intending to maneuver the truck back onto the freeway, he swerved his vehicle sharply toward the left or braked and swerved at the same time. The movement threw the weight of Ark against plaintiff and plaintiff against the door, and the pressure thus created sprung the defective lock, hurling both passengers into the highway.
Walker did not see the men leave the truck. He admits braking the vehicle on the exit in order to consider how to reenter the freeway, but he denies turning the wheel more than one or two degrees.
To rebut Walker's statement he did not swerve, plaintiff produced two expert automotive and mechanical engineers, Lawrence Daniels, head of the mechanical, aerospace and industrial engineering department at Louisiana State University, and his associate, Dr. Mehdy Sabbaghian. They conducted tests to approximate what physical circumstances concurred to create sufficient force to throw both plaintiff and Ark out of the truck. They concluded:
1. The defective condition of the lock reduced the pressure it could withstand from a minimum of 2,000 pounds to 1,000 pounds.
2. Had the lock not been defective the door would not have opened because the pressure created by swerving would have been insufficient to force the lock. Before the door would give, the truck would have turned over.
3. Had the truck traveled on a straight line turning five degrees or less to the left, plaintiff and Ark would not have been ejected from the truck even if the door had opened.
4. The only force sufficient to eject passengers from the truck would have been centrifugal force that exerted pressure against both passengers once the truck began moving in a curve.
The experts explained centrifugal force is that pressure exerted when an object moves on a curved path forcing the object away from the center of rotation.
Unfortunately plaintiff became incompetent and Ark was unavailable so the court does not have the benefit of either man's testimony. We agree two independent acts of negligence concurred to produce the injury, *841 i. e., the swerving maneuver by Walker generated the centrifugal force needed to spring the defective lock and open the truck door. Absent either the swerving maneuver or the ineffective lock, the injury would not have occurred. Defendant Walker's alternative argument is plaintiff was either contributorily negligent or assumed the risk in accepting a ride in the truck with the defective lock. As we have stated before, the defective lock did not produce the injury independent of any other cause. The record is devoid of any evidence as to whether or not Trahan knew the lock was faulty. However if we assume he had such knowledge gained from riding in the truck, he could not be expected to anticipate the driver would maneuver the vehicle in a negligent manner and thereby create sufficient pressure against the door to spring the lock. Nor can it be said he assumed the risk because this defense of assumption of risk presupposes the danger that ultimately produced injury may reasonably be anticipated beforehand.
At the time of the accident Walker, with his employer's permission, had use of the truck at his discretion at any time he so desired while in Houston. However Girard, the employer, has no vicarious liability for the tortious conduct in the use of this truck by his employee Walker because there was no master-servant relationship when the injury occurred. In Blanchard v. Ogima, 253 La. 34, 215 So.2d 902 (1968), the Supreme Court distinguished situations in which the employer may or may not be vicariously liable for the tort of an employee. For liability to attach to the employer, the employee must be a "servant." If the employee is a non-servant, there is no vicarious liability. The Court defined a non-servant agent in this way:
"* * * A non-servant agent contributes to the business of his employer, but he is not such a part of it that his physical acts and the time to be devoted to the business are subject to control." 215 So.2d at 907.
Whether the employee is a servant or non-servant is determined by the degree of control. Walker's supervisory authority over all aspects of the Houston job is that of a non-servant employee. Therefore, the defendant-employer is not subject to the vicarious liability imposed by LSA-C.C. arts. 176 and 2320.
Although Girard is not liable under the respondeat superior doctrine, Continental, his insurer, is liable under the quoted provision of the insurance policy that would include Walker as an omnibus insured:
"II. PERSONS INSURED
Each of the following is an insured under this insurance to the extent set forth below:
* * * * * *
(c) any other person while using an owned automobile * * * with the permission of the named insured, provided his actual operation * * * is within the scope of such permission * * *."
We next consider quantum. The extremely damaging and permanent nature of plaintiff's injuries is not disputed. This, of course, would be difficult to do when the medical evidence establishes plaintiff, 29 years of age at the time of the trial, will probably be confined to a mental institution for the rest of his life. Specific items of damage include $36,942.45 in medical expenses, of which sum $26,969 represents the hospitalization cost of the Veterans Administration Hospital in Gulfport. Future medical expense is estimated at $25 per day. The United States Government has intervened asking this court to recognize a lien against any judgment rendered in plaintiff's favor for accrued medical expenses of $26,969. However, future medical costs will not be chargeable to the plaintiff and the government's claim is restricted to the medical cost incurred to the date of judgment. Thus, the future medical expense will not be paid by plaintiff's curatrix and accordingly is not a compensable item of damage.
*842 Loss of wages between the date of accident and trial were computed at $26,875 by W. E. Groves, plaintiff's expert consulting actuary. He based this computation on a 40-hour week at a $4-per-hour pay rate. Anticipated loss of future earnings were projected at $186,984. This figure was arrived at by computing the work hours remaining during plaintiff's life expectancy, which he multiplied by $4, discounted the total by 4½%, and added 2% to compensate for increase in cost of living.
Mindful of the Supreme Court admonition that we may not use precise mathematical calculations in arriving at an award for future loss of wages, but cognizant of the fact that actuarial projection is one of the best guides available, we think an award of $150,000 would adequately compensate plaintiff for loss of future earnings. York v. Sedotal, 281 So.2d 170 (La.App. 4th Cir. 1973). In making this determination, we are projecting that the investment of these funds at 5% per annum will produce a return of $7,500 per year.
Finally we turn to the award for pain, suffering and residual disability. When plaintiff was injured he was in his late twenties, gainfully employed and his family consisted of a wife and three children, 6, 7 and 9 years of age. Although he lived at home for several months at different intervals after the accident, it was finally determined, and medical experts project, he will be institutionalized for the rest of his life. His condition is diagnosed by his treating physician Dr. F. Eugene Sheely as organic brain syndrome due to trauma with mental deterioration. As a result, he frequently experiences fright; walks with a staggering gait; has weakness of the left arm; a foot drop for which a prosthesis is used; dimmed vision; slurred, stammering and disorganized speech; requires support when he walks; must be supervised when he eats; confined in a locked ward; requires continuous supervision; and his behavioral tantrums, losing control and threatening hospital personnel. We think general damages for this injury should be fixed at $200,000. In summary we award these damages:

Past medical expenses $ 36,942.45
Loss of past wages 26,875.00
Loss of future income 150,000.00
Pain, suffering and disability 200,000.00
 ___________
 $413,817.45

For the foregoing reasons the judgment of the trial court is reversed and judgment is rendered in favor of the plaintiff, Steven Trahan, and against the defendants Robert R. Walker and Continental Insurance Company (to the extent of its policy limits) in solido in the full sum of $413,817.45, together with legal interest: (a) from date of judicial demand on the award for pain, suffering and disability; (b) from the date of judicial demand on that portion of the loss of wages that had accrued on the date suit was filed; (c) from the date of filing of the petition of intervention for the medical expenses claimed therein; and (d) from the date of judgment on the remainder of the damages awarded.
Judgment is further rendered in favor of intervenor, The United States of America, and against plaintiff, Steven Trahan, for the full principal and interest awarded plaintiff for reimbursement of medical expenses.
Defendants cast in judgment are to pay all costs.
Reversed and rendered.
REDMANN, J., concurs with written reasons.
ROBERT M. FLEMING, J. Pro Tem., dissents with written reasons.
REDMANN, Judge (concurring).
Since employers are "answerable for damages occasioned by their . . . overseers", C.C. art. 2320, and Walker's position is no different from that of overseer, *843 Girard would be liable if Walker had at the time of the accident been engaged "in the exercise of the functions in which [he was] employed", art. 2320. But, as to Trahan, the accident did not arise out of and in the course of his employment, and as to Walker, he was not acting in the course and scope of his employment.
I concur in the decree.
ROBERT M. FLEMING, Judge Pro Tem. (dissenting).
It is my opinion that the District Judge is correct in concluding that the plaintiff was acting in the course and scope of his employment when the accident occurred, therefore his remedy is under the Louisiana Workmen's Compensation Act and not in tort.
I respectfully dissent.
NOTES
[1] Plaintiff, confined to the psychiatric division of the Veterans Administration Hospital in Gulfport, Mississippi, as a result of his injuries, did not attend the trial. His treating physician testified a court appearance could upset him to the extent that he might wish to harm those involved in the conduct of the trial.
[2] Ark apparently escaped injury and could not be located by any of the attorneys at the time of the trial.