HOOD, Judge.
Miss Theodora Orestiadou instituted this suit for damages for personal injuries sustained by her as a result of a motor vehicle collision. The defendant is the Succession of Lazarus Andrews. Judgment was rendered by the trial court in favor of plaintiff, and defendant has appealed.
The issues presented are: (1) Was the driver of the automobile in which the plaintiff was riding guilty of gross negligence, sufficient to render defendant liable under the law of the State of Florida? and (2) Was the amount of the award of damages excessive?
The accident occurred about 2:10 P.M., on May 26, 1968, on U. S. Highway 90, about 5.7 miles east of the City of Crest-view, in the State of Florida. Plaintiff was riding as a passenger on the right front seat of an automobile being driven east on that highway by her 73 year old uncle, the late Lazarus Andrews. Andrews attempted to overtake and pass a truck which also was traveling east on the same highway ahead of him. While engaged in that passing maneuver, the Andrews car met and collided with an automobile being driven west by Robert D. Hires. After colliding with the Hires car, the Andrews vehicle continued to travel east several more feet, and then it ran head-on into an automobile being driven west by Quima P. Cobb. Both of these collisions took place in the north, or in the westbound, lane of traffic of the highway. After the Hires car was struck, it continued to travel west and it collided with another vehicle which was following Andrews. As a result of these accidents Lazarus Andrews and the two occupants of the Cobb automobile were killed. Plaintiff and several other persons were injured.
U. S. Highway 90 at that point was a two-lane, hard surfaced, heavily traveled thoroughfare. The hard surfaced portion of it was 24 feet wide. It had rained shortly before the collision occurred, and a considerable amount of water had accumulated and was standing in low spots on the paved highway.
The truck which Andrews was endeavoring to pass when the accident occurred was throwing up a spray of water as it traveled along the highway. Hires, the driver of one of the involved automobiles, testified that the spray being thrown up by the truck “covered” the north, or westbound, lane of traffic completely. At one point in his testimony he referred to it as a “wall of water.” He observed this spray as he was meeting the truck, and he turned on his windshield wipers about 200 yards be *886 fore he met it because he anticipated that the spray would obstruct his vision. He stated that when he met and started to pass the truck, the spray blinded him to the extent that he was unable to see the Andrews car in his lane of traffic until an instant before the collision occurred. The Hires and the Andrews vehicles collided just after Hires had passed the tractor part of the truck and was “coming up on his trailer.”
The evidence establishes that when Andrews entered his left, or the westbound, lane of traffic for the purpose of overtaking and passing the truck, his vision was materially obstructed by the spray, water or mist which was being thrown across that lane of traffic by the truck. There were two cars, the Hires and the Cobb vehicles, in the westbound lane of traffic meeting the truck as Andrews attempted this passing maneuver. Since they could not see the Andrews car until a moment before the first collision, we conclude that Andrews also was unable to see them as he started to go around the truck. The fact that this was a heavily traveled highway should have been apparent to Andrews.
All parties concede that since this accident occurred in the State of Florida, the substantive law of that state applies. Johnson v. St. Paul Mercury Insurance Company, 256 La. 289, 236 So.2d 216 (1970).
The Florida guest statute, cited as Section 320.59, F.S.1951, F.S.A., provides:
“Liability to guest or passenger. No person transported by the owner or operator of a motor vehicle as his guest or passenger, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been caused by the gross negligence or willful and wanton misconduct of the owner or operator of such motor vehicle, and unless such gross negligence was the proximate cause of the injury, death or loss for which the action is brought; provided, that the question or issue of negligence, gross negligence, and willful or wanton misconduct, and the question of proximate cause, and the issue of question of assumed risk, shall in all such cases be solely for the jury; provided that nothing in this section shall apply to school children or other students being transported to or from schools or places of learning in this state.” (Emphasis added).
According to that statute, plaintiff is not entitled to recover from defendant unless the evidence shows that the accident was caused by the “gross negligence” of the decedent Andrews, and that “such gross negligence was the proximate cause of the injury.”
The trial judge concluded that the accident and resulting injuries to plaintiff were caused by the negligence of the decedent, Andrews, in attempting to overtake and pass the truck ahead of him “in the face of heavy traffic,” when “it was obvious he was going to encounter spray that would either interfere with or completely eliminate his vision of traffic approaching from the opposite direction in his passing lane.” The trial court held that Andrews’ acts constituted gross negligence within the meaning of the Florida guest statute, and that such negligence was a proximate cause of the accident.
In Bridges v. Speer, 79 So.2d 679 (Fla.S.Ct.1955), the Supreme Court of Florida held that the complaint sufficiently alleged gross negligence in stating that defendant operated her automobile at a high rate of speed when her eyesight was defective, in that her perception of distance was bad, that she could not safely judge distances and that at times she saw objects double. The court said, with reference to the Florida guest statute, that:
“* * * We think the rule which would more nearly solve the problem than any other would be one which recognized that simple negligence is that course of conduct which a reasonable and prudent *887 man would know might possibly result in injury to persons or property whereas gross negligence is that course of conduct which a reasonable and prudent man would know would probably and most likely result in injury to persons or property. To put it another way, if the course of conduct is such that the likelihood of injury to other persons or property is known by the actor to be imminent or ‘clear and present’ that negligence is gross, whereas other negligence would be simple negligence.
“This likelihood of injury to other persons is established sufficiently to show conduct more culpable than mere simple negligence where the defendant drives an automobile into a highway and into the path of oncoming traffic without first looking, Nelson v. McMillan, 1942, 151 Fla. 847, 10 So.2d 565; Motes v. Crosby, Fla., 1953, 65 So.2d 478; or drives rapidly around a curve to the left of the center of the road where vision is obstructed failing to observe other vehicles, Wharton v. Day, 1942, 151 Fla. 772, 10 So.2d 417; * * *.”
This rule apparently has been applied generally in Florida courts. See Carraway v. Revell, 116 So.2d 16 (Fla.S.Ct.1959); Rudolph v. Morgan, 228 So.2d 121 (Fla.App.1969); Frank v. Lurie, 157 So.2d 431 (Fla.App.1963); Wilson v. Eagle, 120 So.2d 207 (Fla.App.1960).
It has been held that a driver may be guilty of gross negligence, within the meaning of the Florida guest statute, if he “took his eyes from the roadway and glanced around to face plaintiff,” and then ran into the rear of a truck which was traveling in the same direction ahead of him. Hellweg v. Holmquist, 203 So.2d 209 (Fla.App.1963). A petition was held to allege gross negligence and to state a cause of action under the guest statute, where plaintiff alleged that the defendant looked in the rearview mirror of her car for an unreasonable length of time as she approached a traffic light, and collided with the rear of a vehicle which had stopped for that light. Lockridge v. Dial, 208 So.2d 662 (Fla.App.1968). The Florida Supreme Court held that a prima facie case of gross negligence, under the guest statute, had been made out where the driver was driving over 50 miles per hour in a 30-mile zone at night over an unfamiliar road after' having a few beers. Hodges v. Helm, 222 So.2d 418 (Fla.S.Ct.1969).
Defendant has cited several cases in which the Florida courts have held that the acts of the driver did not constitute gross negligence under the guest statute of that state. These include the cases of Frank v. Lurie, supra; Godwin v. Ringley, 126 So.2d 163 (Fla.App.1961); Wilson v. Eagle, supra; Dye v. Freeman, 116 So.2d 647 (Fla.App.1959); and Kroger v. Hollahan, 144 Fla. 779, 198 So. 685 (Fla.S.Ct.1940). We have reviewed all of these cases, but find that the cases hereinabove discussed are more pertinent to the issues presented here.
We agree with the trial judge that the accident which resulted in plaintiff’s injuries was caused by the gross negligence of the decedent, Andrews, in attempting to overtake and pass a truck on a heavily traveled highway when his vision was obstructed by spray from the wheels of the truck. His negligence in that respect was the proximate cause of the accident.
Plaintiff, Miss Orestiadou, was 24 years of age when the accident occurred. She was born in Greece, but has resided in Cameron Parish, Louisiana, for seven and a half years. She attended and graduated from Louisiana State University, and has been an elementary school teacher in Cameron for two and a half years. She intends to become a citizen of the United States.
As a result of the accident plaintiff sustained compound comminuted fractures of the right elbow, the left tibia and the left fibula, fractures of the left femur, multiple lacerations about the left knee, and a contusion of the abdominal wall and chest margin. She was knocked unconscious by *888 the impact, and has a complete lapse of memory as to events which occurred from about 1:00 P.M. on the date of the accident until she recovered consciousness sometime after it had occurred.
Plaintiff was hospitalized in Florida immediately after the accident occurred. While there the cleansing, debridement and closing of her wounds were accomplished. A closed reduction of the fracture of the left tibia and fibula was performed, a cast was applied and a pin for traction was inserted in the right elbow. Her elbow and femur remained in traction for about three weeks, until her wounds healed. An open reduction and insertion of a Hanson-Street nail was then carried out on the left femur, and the pin in her elbow was removed. On July 5, 1968, a long-leg cast was applied to the left leg, and shortly thereafter she was discharged from the Florida hospital and was permitted to return to Louisiana.
On July 14, 1969, more than a year after the accident occurred, the intramedullary Hanson-Street nail was removed from plaintiff’s right femur. Thereafter her treatment consisted largely of traction, exercises, and the casting of her arm and leg, and medication. Her leg remained in a cast for approximately a year, and much of the treatment which was administered was painful. She was unable to care for herself completely during most of that time, but friends brought her food, bathed her and assisted her in caring for her personal needs.
Miss Orestiadou returned to her teaching duties in September, 1968, with considerable difficulty. She was in a cast from her hip to her ankle and had to use crutches to move about. Her right arm also was in a cast and she was unable to write. Friends picked her up and carried her to school each day. Her determination to teach under those handicaps was motiviated largely by the fact that her medical bills were mounting and she had no other source of income and no relatives.
She now walks with a decided limp and has only from ten to thirty degrees of motion in her right arm. The doctors estimate the permanent disability of her right arm at from 45 to 50 percent. Her left leg is shorter than the right, and the medical experts estimate a 221/2 to 35 percent permanent loss of use of that leg.
Plaintiff will be able to continue teaching, but with some limitations and difficulties. Prior to the accident, she taught physical education, and now she can no longer demonstrate the exercises. She used to swim, play tennis, bowl and engage in fencing, but she can do none of those things now. She played a flute prior to the accident, and is no longer able to do that. Because of her stiff arm, she has much difficulty in combing her hair. She is limited to the use of a shower in bathing, because the condition of her leg makes it impossible for her to get into and out of a tub.
The trial judge awarded Miss Orestiadou $37,500.00 as general damages for her injuries, and the additional sum of $4,157.73 as special damages, consisting almost entirely of medical and hospital expenses. No question has been raised as to the amount of special damages, but defendant argues that the award for general damages is excessive.
The trial judge is vested with much discretion m the award of general damages for personal injuries in a tort suit, and we find no abuse of that discretion here.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant.
Affirmed.