276 So.2d 309 (1973)
Mrs. Frances W. JAGERS
v.
ROYAL INDEMNITY COMPANY et al.
No. 52275.
Supreme Court of Louisiana.
March 26, 1973.
Rehearing Denied May 7, 1973.
*310 Gist, Methvin & Trimble, Howard B. Gist, Jr., Alexandria, for defendants-applicants.
James A. Bolen, Jr., Alexandria, for plaintiff-respondent.
DIXON, Justice.
Plaintiff, a Louisiana resident, brought suit against her major son, a Louisiana resident who was a minor at the time of the accident, and their liability insurer. Her son, the driver of the car in which she was injured, was an insured by virtue of the policy provisions. The accident occurred in Mississippi.
After trial, there was judgment for the plaintiff against the defendant insurance company for $10,000, the policy limits, and against the plaintiff's son for an additional sum of $2948.44. The judgment was affirmed by the Court of Appeal. 257 So.2d 806.
Defendants have assigned three errors: that the Mississippi doctrine of intra-family immunity should be applied by the Louisiana court because the accident occurred in Mississippi; that defendant Wesley Lynn Jagers was not negligent or, in the alternative, that his mother was contributorily negligent; that no judgment should have been rendered against Wesley Lynn Jagers in excess of the policy limits.
Intra-Family Immunity:
The Court of Appeal refused to accept defendants' argument concerning the Mississippi law of intra-family immunity, finding that none of the cases cited by defendants hold that a Mississippi parent is prohibited from suing an adult son.
Relying on Deshotel v. Travelers Indemnity Company, 257 La. 567, 243 So.2d 259 (1971), in which we held that a father could bring an action against the liability insurer of his minor son, the Court of Appeal found that there was no prohibition in Louisiana that would prevent an action by this plaintiff against her adult son for damages arising out of an accident which occurred when the son was a minor.
The evidence in the case is not in dispute. The accident occurred August 21, 1969, a few days after hurricane Camille hit the Mississippi coast. Plaintiff's son, Wesley Lynn Jagers, who was born September 20, 1948, was driving the plaintiff's automobile when the accident occurred in Gulfport, Mississippi. He was, at that time, a student at Texas A & M, but was visiting his mother in Gulfport.
Plaintiff had obtained custody of her two children when she was divorced from her husband. Alexandria, Louisiana was her home. She had lived there for thirteen years and owned her home at 2311 Hill Street. Because she taught at a business school in the evening, plaintiff found it advisable to enroll her eleven-year-old son in the Gulf Coast Academy and to move to Gulfport to be near him until he had become acclimated to his new surroundings. She rented living quarters in Mississippi, but retained her home in Alexandria.
Plaintiff was registered to vote in Rapides Parish; her car was registered in Louisiana; she intended to return to Alexandria when she felt that her child could be left alone in school. (The policy of automobile insurance was issued to her by an Alexandria agency, and was mailed to her at her Alexandria address). However, she was employed in Mississippi, and had been there for three months at the time of the accident.
After the accident, the plaintiff remained in Mississippi until it became apparent in *311 December, 1969 that she would require hospitalization. At that time she returned to Alexandria with the intention of remaining there permanently.
At the time of the trial, Wesley Lynn Jagers was twenty-two years old. He still resided with his mother at 2311 Hill Street, Alexandria, Louisiana, and was a student at Texas A & M.
We agree with the trial court and the Court of Appeal that plaintiff Frances W. Jagers and defendant Wesley Lynn Jagers were both domiciled in Louisiana at the time of the accident.
The principal defense in this suit is that the law of Mississippi would prevent this suit by a mother against her son. The cases cited by the defendants and our own meager research (CCP 1391) give little aid to defendants' cause. As a matter of fact, it seems that the Mississippi Supreme Court has decided in Lancaster v. Lancaster, 213 Miss. 536, 57 So.2d 302 (1952), that a major son could maintain a suit against his father for damages arising from an accident which occurred during the minority of the son. By analogy, it seems that Mississippi would allow Mrs. Jagers to sue her son, Wesley Lynn.
Fortunately, it is not essential for us to determine the law of Mississippi. There is no bar in Louisiana to a suit by a parent against a major child for a tort, even one committed during the minority of the child,[1] and we are of the opinion that the law of Louisiana governs this action between these Louisiana domiciliaries.
This case presents a false conflict of laws question. "Conflict of Laws is that part of the law of each state which determines what effect is given to the fact that the case may have a significant relationship to more than one state." Restatement, Second, Conflict of Laws, § 2 (1969). A false conflict occurs when it is found that only a single state has an interest in the application of its law, and that the other state involved has no interest in the application of its law in the case.[2]
Such a case of false conflict was Johnson v. St. Paul Mercury Insurance Company, 256 La. 289, 236 So.2d 216 (1970). There, Louisiana domiciliaries suffered an *312 accident on a trip through Arkansas. During the subsequent litigation in Louisiana, the insurer invoked the Arkansas guest passenger statute. This court held that the law of the place of the tort governed because: (1) the doctrine contributed to certainty and constancy in the law; (2) methods proposed for applying the law of the forum are confusing and faulty; (3) there are constitutional limitations on the freedom of a state to apply its own law to all tort cases brought before it, imposed by the due process and the full faith and credit clauses of the United States Constitution; (4) that the application of the law of the forum to foreign courts gives extraterritorial effect to a state's laws; (5) that the application of the law of the forum is unfair to the defendant; (6) that rules for the application of the law of the forum are difficult to formulate.
No reason advanced for perpetuating the doctrine which would apply the law of the place of the tort, particularly in false conflicts cases like Johnson and the instant case, is either convincing or controlling. Johnson v. St. Paul Mercury Insurance Company, supra, is overruled.
When the foreign state has no interest in the application of its law in Louisiana litigation, we deem that the application of Louisiana law by Louisiana courts will contribute much greater predictability, certainty and constancy to the law.
That some modern methods for determining whether to apply the law of the forum are faulty in some respects should not deter a court in the application of the law of the forum to its citizens, when not otherwise prohibited.[3]
Although there are constitutional limitations on the freedom of a state to deal with the laws of other states, the "vested rights" theory[4] has not been raised to constitutional status, and states are allowed wide latitude in solving conflicts questions. See, Clay v. Sun Insurance Office, Ltd., 377 U.S. 179, 84 S.Ct. 1197, 12 L.Ed.2d 229 (1964); Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Alaska Packers Asso. v. Industrial Accident Commission, 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044 (1935).[5] *313 See also Mitchell v. Craft, 211 So.2d 509 (Miss.1968), where the Mississippi Supreme Court applied the Mississippi doctrine of comparative negligence to a case involving Mississippi domiciliaries and arising out of an accident in Louisiana, where contributory negligence would have defeated the claim of one of the parties.
Certain extraterritorial effect is given to the laws of a state in a conflicts case, whether the law applied is the law of the forum or the law of the place of the tort. The application of the law of the place of the tort imports the law of the neighboring state to the forum state, usually to decide a case between citizens of the forum state, thus giving extraterritorial effect to the law of the place of the tort.
It cannot be said that the application of the law of the forum in a case like the one before us is unfair to the defendant. The application of the doctrine of the law of the forum has not infrequently resulted in judgments for the defendant. See, Koplik v. C. P. Trucking Corp., 27 N.J. 1, 141 A.2d 34 (1958), where the intra-spousal immunity law of New Jersey, the forum state, resulted in the dismissal of the wife's claim arising out of a New York tort, where there was no intra-spousal immunity.
It may be true that the formulation of rules for the application of the law of the forum in cases which might involve the law of more than one state is difficult. Difficulty, however, is no excuse for abandoning the judicial function. At least, in cases like the one before us and Johnson v. St. Paul Mercury Insurance Company, supracases of false conflictthere is no difficulty in deciding to apply the law of the forum. It would not advance any policy of the law of the place of the tort to apply its law, but it would defeat the policies of the state of the forum to apply the law of the foreign state. A contrary conclusion would defeat the policy the State of Louisiana continues to haveto protect its citizens from damage from the wrongful acts of others.
Therefore, we apply the law of the State of Louisiana to the parties before us. We find no impediment to a suit by a parent against her major child for a tort committed during his minority.
Negligence:
This accident occurred at an intersection controlled by a flagman because of a non-operating traffic signal. Wesley Lynn Jagers failed to observe that the traffic on his street had been flagged to a halt, and that the traffic on the crossing street had been directed to proceed. When he entered the intersection, there was a collision between the Jagers car and another vehicle proceeding across the intersection at the instruction of the flagman. The courts below were correct in determining that the accident was caused by the negligence of Wesley Lynn Jagers, and that his mother, the plaintiff, was not contributorily negligent. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); White v. State Farm Mutual Automobile Insurance Co., 222 La. 994, 64 So.2d 245 (1953).
The Excess Judgment:
There was no error in the courts below in casting Wesley Lynn Jagers with an amount in excess of the policy limits. His mother's injuries were serious and disabling. Wesley Lynn Jagers was the beneficiary of a trust established for him by his grandmother. The expenses of his college education were paid by the trust and he was engaged in part-time work during his vacations. There was no evidence that he had neither the means nor the earning capacity to satisfy this judgment.
For these reasons, the judgment of the Court of Appeal is affirmed, at the cost of the defendants.
*314 BARHAM, J., concurs.
SUMMERS, J., dissents and assigns reasons.
SUMMERS, Justice (dissenting).
Without belaboring the issues presented and discussed in depth in Johnson v. St. Paul Mercury Insurance Company, 256 La. 289, 236 So.2d 216 (1970), several pertinent observations are in order and worthy of repetition.
The opinion states that a false conflict occurs when it is found that only a single state has an interest in the application of its law, and that the other state involved has no interest in the application of its law to the case. To arrive at this premise, an assumption is required that the law of the state which is supposed to have no interest in enforcing its law allows exceptions, not announced in that law, in order to accommodate this result. Meaning that, although no exception is stated, it really was intended that the law not be applied under certain circumstances, principally, as here, that the laws of Mississippi would not apply to Louisiana domiciliaries. I doubt that Mississippi law is founded upon such a policy. Such a postulate takes for granted, also, that if the case were tried before the courts of the state which is supposed to have no interest, that court would not apply its law to the case, a highly unlikely assumption. Most importantly, this definition of false conflict enables the courts of one state to decide unilaterally that another state has no interest in applying its law to a tort which occurs within its borders, or to decide what another state would do with respect to its laws when the other state is not a party to the proceeding or given an opportunity to express its view. It is, therefore, a false assumption for a Louisiana Court to say Mississippi has no interest in applying its law to Louisiana domiciliaries. If these observations have validity, then, the definition of false conflicts is based upon a false premise.
Nowhere in the opinion is it set forth what criteria or contacts for applying the law of the forum will be used for decision in this or other cases, except the vague and nebulous reference to "the policy the State of Louisiana continues to haveto protect its citizens from damage from the wrongful acts of others." In my view such a vague generalization of the State's public policy, when applied to happenings outside Louisiana's borders, is not to be assumed. Texas & P. R. Co. v. Humble, 181 U.S. 57, 21 S.Ct. 526, 45 L.Ed. 747 (1901). No statute or evidence in the record supports this assumption.
Conceding that "the formulation of rules for the application of the law of the forum in cases which might involve the law of more than one state is difficult," the Court proceeds to a decision with little or no effort. Based upon the assumption that "it would not advance any policy of the law of the place of the tort to apply its law," without ascertaining what the policy of Mississippi is, the decision is made that Mississippi has no interest in enforcing its law against Louisiana domiciliaries. This is supposed to rationalize applying Louisiana substantive law to a tort committed in Mississippi.
The rule of Johnson v. St. Paul provides the only assurance of even-handed justice to residents and nonresidents alike of any given state. This is an end to which all systematic legal thought should be directed. And it is the only way that states, such as Louisiana and Mississippi, can discharge their federal constitutional obligation to treat all alike.
It is suggested that the sole virtue of the lex loci delicti rule approved in Johnson v. St. Paul is its simplicity and predictability. Actually, these are indispensable characteristics to the primary value of equal treatment before the same law. And these traits are of great value to society in general and to everyone concerned with the administration of justice in particular. It is good that the law is simple enough to be understood by laymen. It is also laudable that it is predictable. One can order his affairs in reliance on it. Lawyers, whose *315 main function is to predict legal consequences, can more accurately provide advice. The consequence is that the travail of litigation is spared to many.
Both state and federal courts and litigants have relied upon the decision in Johnson v. St. Paul: McDaniel v. Petroleum Helicopters, Inc., 455 F.2d 137 (5th Cir. 1972); Lester v. Aetna Life Insurance Company, 433 F.2d 884 (5th Cir. 1970); Brinkley & West, Inc. v. Foremost Insurance Co., 331 F.Supp. 475 (E.D.La.1971); Franklin v. Texas International Petroleum Corp., 324 F.Supp. 808 (W.D.La.1971); Pendleton v. Aetna Life Ins. Co., 320 F.Supp. 425 (E.D.La.1970); Williams v. Petroleum Helicopters, Inc. et al., 256 La. 371, 236 So.2d 501 (1970); Romero v. State Farm Mutual Automobile Insurance Company, 264 So.2d 258 (La.App.1972); Sullivan v. Hardware Mutual Casualty Co., 260 So.2d 35 (La.App.1972), Writ granted 261 La. 1037, 262 So.2d 33; Jagers v. Royal Indemnity Company, 257 So.2d 806 (La.App.1972); Silberman v. Firemen's Ins. Co., 238 So.2d 236 (La.App.1970); Silverstein v. Firemen's Fund Insurance Company, 238 So.2d 237 (La.App.1970); Orestiadou v. Succession of Andrews, 236 So.2d 884 (La.App.1970). See also Franks, Constitutional Mandate of Lex in Foro Loci Delicti, 21 Clev.St.L.R. 122 (1972).
These cases, together with those cited in Johnson v. St. Paulextending over a span of 73 yearsunmistakably establish a constancy of decisions requiring application of the doctrine of jurisprudence constants. The doctrine has been explained with clarity by Professor Pascal in these words:
It is, nevertheless, entirely consistent with the Digest of 1808, and with the general Spanish law of which it was a digest, to affirm that "a long series" of judicial decisions, "constantly repeated" and enjoying "uninterrupted acquiescence" by the people, may evidence that "tacit and common consent" of the people which is as generative of custom as the express consent of the whole people through their representatives is generative of legislation. ... (Pascal, Law in General, 31 La.L.Rev. 185 [1970]).
Not to adhere to this long series of decisions and to vacillate into an area of uncertainty is a departure from the doctrine of jurisprudence constante; the radical change is unwise and erroneous. Founded as the decision is upon policy considerations, the issue lies more properly within the province of the Legislature.
In my view adherence to the doctrine of jurisprudence constante is the wiser policy, because in most matters it is more important that the rule of law at issue be settled than that it be settled right. This is commonly true even where the error is a matter of serious concern, provided correction can be had by legislation. Abendschein v. Farrell, 382 Mich. 510, 170 N.W.2d 137 (1969). For 73 years the Legislature has not acted to change the rule of lex loci delicti. Change was neither demanded nor indicated.
I respectfully dissent.
NOTES
[1] Deshotel v. Travelers Indemnity Company, supra; CC 1785, 1874 and 2227. In Deshotel, this court stated:

"From all this legislation and jurisprudence we conclude that the father has a cause of action against his minor son for damages resulting from the minor's delictual acts. Moreover, there now exists no bar, either legislative or jurisprudential, to a right of action in the father during the minority of the child. If the child has a defense of no right of action, it would be personal to him and could not be relied upon by his insurer. Edwards v. Royal Indemnity Co. [182 La. 171, 161 So. 191], and LeBlanc v. New Amsterdam Casualty Co. [202 La. 857, 13 So.2d 245], both cited above." (257 La. at 572, 243 So.2d at 261).
[2] "The most notable contribution was made by Brainerd Currie, who, in a series of careful essays, set forth and then illustrated and refined his interest analysis theory for resolving choice-of-law problems. Perhaps his most significant contribution was that he taught us to recognize and isolate the choice-of-law cases which pose a false conflict. A false conflict occurs when, after examining the content and objectives of the laws of states A and B relating to the specific issues, it is found that only state A has an interest in the application of its law and that state B has no interest. It seems clear that the law of state B should not be applied if doing so will not advance any policy of that state and will defeat the policies of state A. In such a case, there is no reason for applying the law of state B except that some rule directs it in the (false) hope of achieving certainty. However, when all of the states have adopted the false conflict technique (as they are in the process of doing), there will be a uniform resolution of these casesa uniformity founded on a far more rational basis. Among conflicts writers and courts which have tackled the problem, there is virtual agreement concerning the disposition of false conflicts." Couch, Choice-of-Law, Guest Statutes, and the Louisiana Supreme Court: Six Judges in Search of a Rulebook, 45 Tul.L.Rev. 100, 106 (1970).
[3] For choice-of-law principles, see Restatement, Second, Conflict of Laws, § 6 (1969):

"(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law,
"(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
"(a) the needs of the interstate and international systems,
"(b) the relevant policies of the forum,
"(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
"(d) the protection of justified expectations,
"(e) the basic policies underlying the particular field of law,
"(f) certainty, predictability and uniformity of result, and
"(g) ease in the determination and application of the law to be applied."
[4] A basis for Johnson v. St. Paul Mercury Insurance Company, supra, was the "vested rights" theory. See, Couch, supra, note 2, at 111.
[5] In Alaska Packers Association v. Industrial Accident Commission of California, 294 U.S. 532, 547, 55 S.Ct. 518, 524, 79 L.Ed. 1044 (1935), the court stated that: "... whether the statute and policy of the forum is set up as a defense to a suit brought under the foreign statute or the foreign statute is set up as a defense to a suit or proceedings under the local statute ... the conflict is the same. In each, rights claimed under one statute prevail only by denying effect to the other. In both the conflict is to be resolved, not by giving automatic effect to the full faith and credit clause, compelling the courts of each state to subordinate its own statutes to those of the other, but by appraising the governmental interests of each jurisdiction, and turning the scale of decision according to their weight."