COMMERCIAL UNION INSURANCE
COMPANY

v.

The UPJOHN COMPANY

Civ. A. No. 751067.

United States District Court,
W. D. Louisiana,
Shreveport Division.

Jan. 26, 1976.

A. K. Goff, III, Goff, Goff & Levy, Ruston, La., for plaintiff.

Dewey W. Corley, Cook, Clark, Egan, Yancey & King, Shreveport, La., for defendant.

## RULING ON MOTIONS

DAWKINS, Senior District Judge.

We now have before us defendant's motion to strike plaintiff's claims for punitive damages and attorney's fees, together with a motion for a more definite statement. Rules 12(e), (f), F.R.Civ.P.

By complaint filed October 2, 1975, Commercial Union Insurance Company (Commercial) brought this products liability action against The Upjohn Company (Upjohn) for recovery of damages. The controversy arises out of a fire which occurred on or about August 4, 1975, during which a building owned by plaintiff's insured, Willie B. Hughes, together with its contents, was destroyed.

Commercial had written two policies of insurance protecting Hughes against

the risk of loss by fire. In accord with the terms and conditions of these policies, plaintiff paid the insured, loss payees, and lienholders under the contracts the sum of $147,705.67, thereby becoming legally and conventionally subrogated to that extent.

Plaintiff contends that the intensity of the fire and extent of the accompanying destruction were aggravated greatly by the presence in the building of a urethane foam-spray insulation product developed, tested, manufactured, and marketed by Upjohn under the trade-name Isonate System CPR 425. Commercial further contends that Upjohn is liable under the theory of strict liability, and, in the alternative, ordinary negligence. Finally, plaintiff alleges that Hughes authorized the use of Isonate System CPR 425 by his contractor, Delta Refrigeration Co., in reliance upon certain express and implied warranties that the compound was fire-proof, fire-safe, and fire-retardant.

Commercial here seeks recovery of insurance claims paid, attorney's fees in the sum of $25,000.00, together with punitive damages of $1,000,000.00.

Jurisdiction is conferred upon us by 28 U.S.C. § 1332.[1]

### DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES

Upjohn contends as grounds for its motion to strike Commercial's claims for punitive damages that such properly is not a recoverable element of damages under Louisiana law. Plaintiff responds that Louisiana's substantive law is not determinative of the rights and liabilities of the parties, arguing instead that the law of the state of manufacture of the product should apply.

Properly treating defendant's motion as one to dismiss for failure to state a claim upon which relief may be granted, Rule 12(b)(6), F.R.Civ.P., we first must decide the issue of legislative jurisdiction; that is, the choice of state law to be applied to the controversy. *Erie R. R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In so doing, we are bound to apply the conflict of laws rules of Louisiana, the forum state. *Klaxon v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The traditional *lex loci delicti* rule, or "vested rights" doctrine, recently was abandoned in Louisiana in *Jagers v. Royal Indemnity Co.,* 276 So.2d 309 (La.S.Ct., 1973). There plaintiff and her then minor son, Louisiana domiciliaries, were involved in an automobile accident in Mississippi. Mrs. Jagers brought an action in Louisiana against her son's automobile liability insurer for recovery of damages sustained as a result of personal injuries. Defendant contended that Mrs. Jagers' action against her son was barred under Mississippi law.[2]

The Court deemed that issue immaterial, holding that the case posed a false conflict of laws question. Such posture is present "where only a single state has an interest in the application of its law." *Jagers v. Royal Indemnity Co., supra* at 311. The Court concluded that no policy of the State of Mississippi, the place of the tort, would be served by application of Mississippi law. Moreover a contrary conclusion would abrogate Louisiana's obligation to redress the injuries of its citizens harmed by the wrongful acts of others. *Jagers v. Royal Indemnity Co., supra* at 313.

We conclude, for reasons given *infra,* that we presently are faced with a true conflicts question. Unfortunately, however, the rejection in *Jagers* of the

1. Plaintiff is a citizen of New York; Upjohn is incorporated under the laws of Delaware, and maintains its principal place of business outside New York.

2. Defendant there argued that Mrs. Jagers' action would be barred under a Mississippi doctrine of intra-family immunity. While that argument was at best questionable, Louisiana clearly would permit Mrs. Jager's action to lie against her son. *Deshotel v. Travelers Indemnity Co.,* 257 La. 567, 243 So.2d 259 (1971).

*lex loci delicti* rule in cases of false conflicts left " . . . a vacuum in Louisiana conflicts principles unfulfilled by the remainder of the opinion." *Brinkley & West, Inc., v. Foremost Insurance Co.,* 499 F.2d 928, 931, 932 (5th Cir., 1974).[3] There has been no plain statement that Louisiana now will employ the precepts of the *Restatement, (Second), Conflict of Laws* (1971), in a true conflicts case; that is, the standard has not been "declared by the legislature or by decision of the highest court of the state." *Erie R. R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188, 1194 (1938). Accordingly, we "must utilize the same methodology that would be employed by the state courts themselves when they are confronted with a question for which no authoritative answer can be found." *First Nat. Life Ins. Co. v. Fid. & Dep. Co. of Md.,* 525 F.2d 966 (5th Cir., 1976). We sit, " 'in effect, [as] only another court of the State.' *Angel v. Bullington,* 330 U.S. 183, 187, 67 S.Ct. 657, 659, 91 L.Ed. 832, 835 (1947); *Mississippi Power Co. v. Roubicek,* 462 F.2d 412 (5th Cir., 1972)." *First Nat. Life Ins. Co. v. Fid. & Dep. Co. of Md., supra.*

■ We are of one mind with the Fifth Circuit that the *Jagers* "weather vane" points to the inescapable conclusion that Louisiana Courts will hold that interest analysis principles embodied in the *Restatement* must be employed in the judicial resolution of a true conflicts problem. The *Jagers* Court noted:

"That some modern methods for determining whether to apply the law of the forum are faulty in some respects should not deter a court in the application of the law of the forum to its citizens, when not otherwise prohibited." *Jagers v. Royal Indemnity Co., supra* at 312.

The footnote immediately following that passage cites the choice of law principles at § 6, *Restatement, (Second), Conflict of Laws* (1969), the interest analysis rule.[4]

■ The *Restatement* commentators suggest that the more important factors to be weighed in a tort action are: (1) relevant policies of the forum state; (2) relevant policies of other interested states and the relative interest of those states in determining the particular issue; and (3) ease in determination and application of the law to be applied. See *Brinkley & West, Inc., v. Foremost Insurance Co., supra* at 932.

Section 145, *Restatement, (Second), Conflict of Laws* (1971), sets down further guide for determining which state

---

**3.** *Jagers* has been cited for its narrow holding on the false conflicts question by both the Supreme Court and appellate courts of Louisiana. See: *Romero v. State Farm Mutual Auto Ins. Co.,* 277 So.2d 649 (La.S.Ct., 1973); *McNeal v. State Farm Mutual Auto Ins. Co.,* 278 So.2d 108 (La.S.Ct., 1973); *Trahan v. Girard Plumbing & Sprinkler Co.,* 299 So.2d 835 (La.App. 4th Cir., 1974); *Schoelen v. Fidelity & Casualty Co.,* 318 So.2d 90 (La.App. 3rd Cir., 1975). The Supreme Court of Louisiana has not been faced with a true conflicts question since *Jagers*; however, see *Wayne v. Olinkraft, Inc.,* 293 So.2d 896 (La.App. 2d Cir., 1974), where Restatement rules were applied to a true conflicts case.

**4.** § 6. *Choice-of-law Principles*

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of the result, and

(g) ease in the determination and application of the law to be applied.

We perceive the *Jagers* decision as a negative pregnant; that Louisiana courts will not apply *Restatement* principles to a false conflicts issue implies that interest analysis *will control* a *true* conflicts issue.

has the most significant relation to a tortious occurrence:

"§ 145.  *The General Principle*

"(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

"(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

"(a) the place where the injury occurred,

"(b) the place where the conduct causing the injury occurred,

"(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

"(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue."

In the case before us, the alleged injury undisputedly occurred in Louisiana. However, the conduct of tortiously substandard design, testing, and manufacture occurred, if at all, in a foreign state.[5]  Neither party is incorporated in Louisiana; yet both do business in the forum state.  Finally, the parties appear to have no truly centered relationship.

Section 147 of the *Restatement* further refines § 145 in providing:

"§ 147.  *Injuries to Tangible Things*

"In an action for an injury to land or other tangible thing, the local law of the state where the injury occurred determines the rights and liabilities

of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence, the thing, and the parties, in which event the local law of the other state will be applied."

Comment *e* thereunder provides:

"*e.  When Conduct and Injury Occur in Different States.*

"For reasons stated in § 146, Comment *e*, the local law of the state where the injury occurred to the tangible thing will usually be applied to determine most issues involving the tort (See § 145, Comments *d–e* and §§ 156 through 166 and 172) on the rare occasions when conduct and the resulting injury to the thing occur in different states.

"The local law of the state where the injury occurred is most likely to be applied when the injury is done to land or to a chattel that has a settled connection with the state, which means that it is located in the state for other than a temporary purpose."[6]

Thus, Louisiana clearly has a significant relationship to the occurrence, much more strongly than the mere interest of a forum state that its rules of trial administration be followed.  Moreover, the substantive law of Louisiana should be applied unless the state of manufacture has a greater interest in the application of its law under § 6 principles.  This is not to say that the choice of law is determined by a mere tallying of contacts; rather, where contacts lie within more than one state, and there is a true conflict of substantive law, the forum state is entitled to considerable attention being given to applicable § 6 principles where injury to a tangible thing occurs within its borders.

5.  We have been apprised by counsel that Upjohn manufactures Isonate System CPR 425 in several states.  Discovery has not yet revealed the state of manufacture of the insulation compound actually utilized in the insured's premises.  However, for purposes of this ruling, we assume that the state of manufacture provides for recovery of punitive damages.

6.  See also: § 146, Reporter's Note, Comment *e*, and cases there cited.

We now turn to the relevant § 6 principles. Plaintiff contends that the state of manufacture, or conduct, has significant contact with the occurrence and a relevant policy of awarding punitive damages against the party engaging in tortious conduct within its jurisdiction. Defendant's contention that punitive or vindictive damages are not recoverable in Louisiana is correct. Much more important than the bare words of the rule of law is the public policy which forms its basis.

■ Under Louisiana law, "damages" speaks to reparation or compensation of actual damages; no more and no less. As was held in *Vincent v. Morgan's La. T.R. & S.S. Co.*, 140 La. 1027, 74 So. 541 (1917):

> "[No] person . . . injured . . [is] entitled to recover anything more in the way of damages than adequate indemnity for the injury and loss inflicted upon him . . . in mind, body, or estate; there being *no provision* in our system of laws which authorizes the cumulation in such cases of a civil action for the redress of a private wrong with a *quasi criminal prosecution for the assumed benefit of the public*, but the sole purpose and principal effect of which is to increase the *adequate* indemnity recovered by the plaintiff as actual and compensatory damages by the addition of pecuniary penalties imposed as exemplary, punitive, or vindictive damages." *Vincent v. Morgan's La. T.R. & S.S. Co., supra* at 549. (Emphasis ours.)[7]

■ That Louisiana courts have remained unswerving in their rejection of punitive damages in a civil action is clear. *Breaux v. Simon*, 235 La. 453, 104 So.2d 168 (1958); *Holcombe v. Superior Oil Co.*, 213 La. 684, 35 So.2d 457 (1948); *Fassitt v. United T. V. Rentals, Inc.*, 297 So.2d 283 (La.App., 1974); *Boutee v. Hargrove*, 277 So.2d 757 (La.App., 1973). That rule likewise has been recognized frequently by *Erie* courts. *Baggett v. Richardson*, 473 F.2d 863 (5th Cir., 1973); *Bacharach v. F. W. Woolworth*, 212 F.Supp. 83 (E.D.La., 1963).

■ Counsel for plaintiff vigorously asserts that Louisiana's rejection of punitive damages is unconscionable, particularly where, as here, a Louisiana consumer allegedly has suffered injury caused by a defective product manufactured in a foreign state. Commercial argues that the State of Louisiana thus is held out as a "safe harbor" into which foreign manufacturers may forward defective merchandise with the comforting knowledge that they are immune from judicial imposition of exemplary relief in a civil action. These arguments, though perhaps well taken if they were directed to the Louisiana Legislature, properly are not within our province as an *Erie-Klaxon* court.

■ We hold, therefore, that where Louisiana has a significant relationship to a tort action, together with a well-reasoned, long-standing rule of law relevant to public policy, the party who would have us derogate from Louisiana law to that of another state must bear the burden of proving a significant relationship and interest in the foreign state so compelling as to transcend Louisiana's interest in application of its substantive law. Indeed this burden may be insurmountable;[8] but we reason that this conclusion fosters ease in determination and application of the law, together with

---

7. This decision was heralded by the dissent of Mr. Chief Justice Slidell in *Black v. Carrollton R. R. Co.*, 10 La.Ann. 33 (1855):

"Where the immediate sufferer is plaintiff, as he is to be indemnified, every circumstance tending to his injury, whether in mind, body, or estate, may be taken into view; but considerations cannot be entertained which do not relate to the consequences of the injury to the sufferer. The true issue in the action is the guilt of the defendant and the damage it did to the plaintiff. Criminal punishment is not to be inflicted in a civil action." *Vincent v. Morgan's La.T.R. & S.S. Co., supra* at 548.

8. Brainerd Currie suggests that a forum state with a significant interest always should adhere to its substantive law.

See: H. Couch, *Interest Analysis*, 49 Tul.L.R. at 8, 9.

furtherance of the relevant policies of the forum state.[9]

 Plaintiff having failed to carry this burden, we hold that Louisiana substantive law properly must control the issues here.

 Accordingly, plaintiff's claim for punitive damages hereby is dismissed for failure to state a claim upon which relief may be granted. Rule 12(b)(6), F.R. Civ.P.

## DEFENDANT'S MOTION TO STRIKE

### PLAINTIFF'S CLAIM FOR ATTORNEY'S FEES

Again defendant's motion to strike properly must be treated as a motion to dismiss for failure to state a claim upon which relief may be granted. Rule 12(b)(6), F.R.Civ.P.

 Upjohn correctly contends that attorney's fees are not recoverable under Louisiana law absent specific authorization either by the statute or contract. *Breaux v. Simon, supra; Washington Aluminum Co. v. Pitman Construction Co.*, 383 F.2d 798 (5th Cir., 1967); *Nat Harrison Associates, Inc., v. Gulf States Utility Company*, 491 F.2d 518 (5th Cir., 1974). Plaintiff responds that attorney's fees are recoverable pursuant to Louisiana Civil Code Article 2545 (*as amended*, Act 84 of 1968).[10]

 Carefully having researched the applicability of that Article to a products liability action, we nonetheless desire further argument thereon.

Accordingly, this motion hereby is deferred to the merits.

### DEFENDANT'S MOTION FOR A MORE DEFINITE STATEMENT

Defendant here seeks itemization of plaintiff's claim for payments made to the insured, loss payees, and lienholders pursuant to the terms and conditions of the insurance contracts.

 This information being readily available through discovery devices, defendant's motion hereby is denied.

---

9. We believe theses reasons conform to the language of the Supreme Court of Louisiana in *Jagers* quoted in this opinion.

10. That Article provides:

"The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorney's fees, is answerable to the buyer in damages."