646 F.2d 200
 COLT INDUSTRIES OPERATING CORPORATION, Plaintiff,
v.
Clara Sue COBB and Hope Early Cobb, Testamentary Executrix
of the Estate of Howell C. Cobb, Defendants-Appellees,
v.
J. P. SAUER & SOHN, GmbH, and The Landesbank
Schleswig-Holstein Girozentrale, Defendants-Appellants.
 No. 80-3669
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 Unit A
 May 28, 1981.
 Stephen T. Victory, Frederick T. Kolb, New Orleans, La., for defendants-appellants.
 Provosty, Sadler & deLaunay, Jr., Frederick B. Alexius, Richard B. Sadler, Jr., William H. deLaunay, Jr., Alexandria, La., for defendants-appellees.
 Appeals from the United States District Court for the Western District of Louisiana.
 Before CHARLES CLARK, REAVLEY and WILLIAMS, Circuit Judges.
 JERRE S. WILLIAMS, Circuit Judge:
 
 
 1
 Clara Cobb was seriously injured and permanently disabled by the accidental discharge of a gun manufactured by J. P. Sauer & Sohn, a West German firearms manufacturer. Cobb, and the estate of her father, obtained jurisdiction over Sauer under the Louisiana Long Arm Statute, and upon jury trial, were awarded a judgment against Sauer in the amount of $785,000 in the state courts of Louisiana. This judgment was upheld on appeal.
 
 
 2
 In partial execution of this judgment, Ms. Cobb and Hope Early Cobb, the executrix of her father's estate, instituted garnishment proceedings in state court against Colt Industries, an American firearms dealer which purchases arms from Sauer. Colt responded that at the time $146,144.49 was owed to Sauer by Colt for guns purchased. Subsequently, Colt was notified by Sauer that Sauer's accounts receivable had been assigned for a number of years to The Landesbank Schleswig-Holstein Girozentrale, Kiel, Federal Republic of Germany in security for a large debt owed by Sauer to Landesbank. Colt then brought this interpleader action in federal court against the Cobbs, Sauer and Landesbank, and the First National Bank of Boston. The First National Bank of Boston was included because another shipment of guns from Sauer to Colt was in the process of completion. But by stipulation of the parties, any sums of money involved in this transaction and any claims involving the First National Bank of Boston have been withdrawn from the case.
 
 
 3
 The district court rendered judgment in favor of the Cobbs in the sum of $146,144.49 less an attorney's fee for the lawyer of Colt. The award of attorney's fees to Colt is not at issue on this appeal. Sauer and Landesbank have appealed the judgment of the district court. It is their claim that Sauer's assignment of its accounts receivable to Landesbank creates a priority over the garnishment claim of the Cobbs.
 
 
 4
 It is our conclusion that the Sauer and Landesbank claim, based as it is upon the application of conflict of law principles, misses the mark. In the Louisiana garnishment proceeding which is the origin of the Colt Industries interpleader action, the law of Louisiana is clearly the only law which is involved. Under now well established principles, this case is a false conflicts case. A false conflicts case is one in which only one of the jurisdictions involved is found on analysis, to have an interest in the outcome of the case.[1] After an examination of the specific issues and the relationship of Louisiana and Germany to those issues, it must be concluded that the nation of Germany does not have a legally cognizable interest in the resolution of this case.
 
 
 5
 Reducing this case to its elements, we have a judgment creditor, a citizen of Louisiana, who held a valid judgment against a judgment debtor, Sauer, located in Germany.[2] As a means of collecting a portion of that judgment, the Louisiana judgment creditor brought a garnishment proceeding against Colt Industries, a corporation doing business in Louisiana, to garnishee a debt which Colt Industries owed Sauer. This is the sum total of the legal relationships involved in the garnishment proceedings as they were brought in the Louisiana court.
 
 
 6
 It was only later that Sauer notified Colt that it had some years earlier assigned all of its accounts receivable to Landesbank. No official notice had ever been given Colt before, nor had the assignment been recorded in Louisiana. Colt's payment of its obligation to Sauer was properly subject to being stopped by the garnishment proceeding in Louisiana. At that time there was no notice nor action of any kind by Landesbank to establish that Colt owed the money to Landesbank rather than to Sauer. Under the law of Louisiana, Colt owed the obligation to Sauer at the time the garnishment proceeding was brought.
 
 
 7
 Louisiana law clearly recognizes the false conflicts principle. Jagers v. Royal Indemnity Co., 276 So.2d 309 (La.1973). This Court and the federal district courts located in Louisiana have recognized Louisiana's adherence to the false conflicts principle prior to this case. Lester v. Aetna Life Ins. Co., 433 F.2d 884 (5th Cir. 1970), cert. denied 402 U.S. 909, 91 S.Ct. 1382, 28 L.Ed.2d 650 (1971); Ardoyno v. Kysar, 426 F.Supp. 78 (E.D.La.1976).
 
 
 8
 It must be concluded that the law of this case as applied by the Louisiana courts is clear. Louisiana law would recognize the right to garnishment by the Louisiana resident Cobb, the judgment creditor, against the money owed by Colt to the judgment debtor Sauer. This conclusion in no way jeopardizes whatever priorities would be established by valid assignments of accounts in the usual course of commercial practices when the assignee of such accounts receivable has recorded the assignment in Louisiana and has given actual notice to the debtor of such accounts receivable so that the debtor knows the business entity to which the assigned accounts are owed. These obvious requirements to establish a claim of priority in an assignment under usual commercial practice have not been met in this case.
 
 
 9
 The judgment of the district court awarding the interpleaded amount to the judgment creditor Cobb who brought the garnishment proceedings in the Louisiana state courts is
 
 
 10
 AFFIRMED.
 
 
 
 [1]
 Currie, Notes on Methods and Objectives in the Conflict of Laws, in Selected Essays on the Conflict of Laws, 177, 180 (1963); Cavers, The Choice-of-Law Process, 88-96 (1965)
 
 
 [2]
 Judge Leflar specifically recognized the impact that judgments obtained by long arm statutes would have on conflict of laws principles and that the impact favors the forum. Leflar, Torts Provisions of the Restatement of Conflicts Second, 72 Colum.L.Rev. 267, 277 (1972)