**Lori Ann PAULL**

v.

**Christy ZOLFOGHARY, et al.**

**Civ. A. No. 82–3742.**

United States District Court,
E.D. Louisiana.

Aug. 9, 1985.

Darleen M. Jacobs, New Orleans, La., for plaintiff Paull.

Esmond Phelps and Dodge Hobson, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for Employers Cas. Co., Dr. Chris Zolfoghary and Christy Zolfoghary.

Bernard, Cassisa, Saporito & Elliott, Stephen N. Elliott, Metairie, La., for General Motors Corp.

Simon, Peragine, Smith & Redfearn, Daniel J. Caruso, T.A., and Susan F. Clade, New Orleans, La., for Amica Mut. Ins. Co.

## OPINION

ARCENEAUX, District Judge.

This matter comes before the Court on motion of plaintiff Lori Ann Paull for sum-

mary judgment. The issue presented is whether the Louisiana statute which limits the "stacking" of uninsured/underinsured motorists coverage, is applicable to the facts and circumstances of this case.

The other issues raised by the parties in motions and memoranda have been resolved, as reflected in agreements announced by counsel at oral argument.

### Facts

The following facts are not in dispute.

Plaintiff, a student enrolled at Southern Methodist University in Dallas, Texas and a resident of the State of Connecticut, was injured in a one-car accident which occurred in New Orleans, Louisiana while she was visiting that city during the 1982 Mardi Gras season. She was a guest passenger in a Texas-licensed car which was being driven by a fellow student, a resident of the State of Texas; the car was owned by the fellow student's sister, Elizabeth Zolfoghary, a Louisiana resident and Texas domiciliary.

Plaintiff's present claims are against the following defendants: Christy Zolfoghary, (who is sometimes in the pleadings referred to as "Miriam," although "Christy" and "Miriam" are the same person); Elizabeth Zolfoghary (the owner of the car); Employer's Casualty Insurance Company (the liability insurer of the car); and Amica Mutual Insurance Company (the uninsured/underinsured insurer of the plaintiff pursuant to a policy issued in Connecticut). The liability insurer of the automobile has paid the limits of its policy of liability insurance to the plaintiff, who now seeks damages allegedly exceeding that amount under the terms of Amica's automobile policy, and separate endorsements (the policies). The Amica policies afford underinsured/uninsured coverage to plaintiff as a named insured thereunder. Plaintiff seeks to "stack" the policy limits.

There is no dispute that additional coverage amounting to $120,000 could be "stacked" under the terms of the policies and Connecticut law, and would be available to plaintiff were it not for the terms of

La.Rev.Stat.Ann. § 22:1406(D) (West 1985), which limit the amount of underinsured coverage to $40,000.

### I.

The parties have agreed that, as to the substantive liability claim, the law of Louisiana would apply. Defendant Amica, asserts that Louisiana law should apply to all aspects of the case and that, therefore, the Louisiana coverage limitation statute applies. Amica further claims that the "interest analysis" doctrine adopted by the Louisiana Supreme Court in *Jagers v. Royal Indemnity Co.*, 276 So.2d 309 (La.1973), when applied to the facts of this case, also compels that conclusion.

This Court disagrees, and finds that the issue of "stacking" the coverage afforded by the Amica policies can and should be determined separately from the other issues in the case.

It would be simple, indeed, to say that the interest analysis test announced in *Jagers* requires the application of Louisiana law to all issues presented, including the issue of "stacking" of underinsured motorist coverages, and thus relegate the plaintiff to the additional $40,000 in coverage pursuant to the provisions of Louisiana law. As noted by Judge Brown in *Brinkley and West, Inc. v. Foremost Insurance Co.*, 499 F.2d 928 (5th Cir.1974), while that approach "is beguiling," Louisiana "... in its deliberate break with the past has accepted the burden which flows from abandoning the easy way out...." *Brinkley and West, Inc.*, at 935.

The Court, therefore, must plow the hard furrow.

The doctrine of "[d]epecage, ... the application of rules of different states to determine different issues in a case has been well accepted in conflict analysis," *Ardoyno v. Kyzar*, 426 F.Supp. 78, 84 (E.D.La.1976). Thus the Court is not obliged to apply Louisiana law to the whole case and elects to deal separately with the issue as to whether the Louisiana statute limits the coverage which would otherwise

be available to the plaintiff under the terms of her Connecticut policies, and the law of that state. Conn.Gen.Stat.Ann. § 38–175c (1985), *Nationwide Insurance Co. v. Gode*, 187 Conn. 386, 446 A.2d 1059 (1982).

## II.

The "separated issue" of "stacking" presents a real, as opposed to a false, conflict between the laws of Louisiana and Connecticut. The parties have so agreed and the Court concurs. Louisiana's interest in seeing that its laws are applied to this issue are more than simply concerns that its rules of trial administration be followed. Presented are interests of the state reflecting a public policy contained in an act of its Legislature. Connecticut, acting from like motives and in a similar manner, has reached a contrary position. The conflict is real, not supurious.

Hence, the Court must apply the *Jagers* mandated analysis of the respective state interests which are relevant to the issue presented.

Louisiana's interests in this issue, when compared with those of Connecticut, are, at best attenuated. It served as the situs of the accident which involved a vehicle owned by a Texas domiciliary, Elizabeth, but used by her in Louisiana while she attended Tulane University, in New Orleans. The driver, Christy Zolfoghary, was a resident of the State of Texas.

It seems clear that Louisiana's purpose in enacting the uninsured/underinsured motorist statute is founded on a policy of valid state concern—to protect persons suffering injury in automobile accidents on its roadways against the possibility of their being unable to secure at least minimal

compensation for personal injuries sustained; to protect them against the hazards of injury at the hands of persons otherwise impecunious, and without liability insurance, or under circumstances where that insurance is inadequate. This is the common thread in the fabric of both statutory and decisional law, loomed by the legislature, and tailored by the Supreme Court in *Jagers*, pere et fils. Thus, this fundamental concern is sufficient to warrant the application of Louisiana law mandating such coverages, where the laws or provisions of insurance policies issued in other states would require a different result.

But to say that this fundamental consideration should always be limited by the mechanical application of Louisiana's limitation on the *extent* of coverage would be to deny the existence of any cognizable interest by another state in the well-being and welfare of its citizens. In analyzing the applicability of the Louisiana limitation, structured as it is to "prohibit stacking except under designated circumstances" *Courville v. State Farm Mutual Automobile Insurance Co.*, 393 So.2d 703, 705 (La. 1981), the Court believes it probably reflects the Legislature's concern with the cost of premiums on insurance policies paid by its citizens.[1]

But where a policy has been issued in another state, affording greater coverage, for which premiums have been paid in that other state, the application of the limitation would amount to an unintended benefit to the companies which wrote the policies in the first place. Thus, while Louisiana's fundamental policy determination, relative to the availability of uninsured/underin-

---

1. McKenzie, *Louisiana Uninsured Motorist Coverage After Twenty Years,* 43 La.L.Rev. 691 (1973) states:

> The prostacking decisions arose in an era when the mandated UM coverage limits were the minimal $5,000/$10,000 limits. Amendments to the statute in 1972, 1974, and 1977 greatly expanded the insured's right to acquire UM protection. With this increased access to UM coverage, the legislature was persuaded to adopt ACT 623 of 1977, which is known as the "anti-stacking" provision.

43 La.L.Rev. at 719.

Concern with the premium burdens attendant to resultant availability of vastly increased limits of coverage afforded by "stacking" outweighed the public policy basis of the unlimited stacking rule, created (as it clearly was) to provide an augmented fund adequate to provide at least minimal recovery of actual damages, which so frequently had exceeded the initial "layer" of UM coverage. This would seem to be the genesis of the statutory limitation on "stacking."

sured motorist coverage, requires the consideration and application of Louisiana's laws in that regard, it is quite another matter in the case at hand to apply the Louisiana "stacking" limitation in such a way as to prohibit the availability of yet additional coverage.

Louisiana's interest in requiring uninsured/underinsured coverages are met by the subject Connecticut policies.

But, as noted earlier, determining the applicability of Louisiana's limitations on "stacking" implicates interests other than those of Louisiana, and requires the Court to determine the extent to which the interest of yet another state, in this instance Connecticut, should be measured, and limited, by Louisiana's statutory policy. Connecticut's interests are significant. The injured guest was a domiciliary of that state, insured under a policy of insurance issued in that state, covering a vehicle located and domiciled in Connecticut. The evidence is uncontradicted that she consistently returned to that state when not at school in Texas, and that she resided there with her parents.

Connecticut has a clearly valid and superior interest in measuring the extent to which its citizens, who may be victims of automobile-spawned wrongs, should be compensated, when weighed against Louisiana's interests in limiting the recovery which those citizens might otherwise receive under policy provisions, written in Connecticut.

Of course, should Connecticut have determined otherwise, as was the case in *Stickney v. Smith*, 693 F.2d 563 (5th Cir. 1982), an equivalent result would not obtain, since, in such event, a collision between the two countervailing policies would require observance of Louisiana's fundamental public policy considerations requiring uninsured/underinsured coverage in minimum amounts.

But this case involves no such fundamental conflict; at issue here is not "if," but "how much"—a dispute as to quantum, not the availability of a remedy. Certainly,

Connecticut has a stronger interest in having its law applied to this controversy over extent of coverage than does Louisiana. (*See Fensaci v. Travelers Insurance Co.,* 642 F.2d 986, 992 (5th Cir.1981)).

Because Connecticut's interests in this issue are clearly paramount to those of Louisiana, as to the issue presented, Connecticut law and the relevant provisions of the Amica policies are to be applied.

The motion of plaintiff for summary judgment is GRANTED.