Michael KARAVOKIROS, Plaintiff,

v.

**INDIANA MOTOR BUS COMPANY,** Carrier's Insurance Company, Charles A. Blankenship, Defendants.

Civ. A. No. 80–1884.

United States District Court, E. D. Louisiana.

Aug. 12, 1981.

Robert C. Lowe, Michael R. Allweiss, New Orleans, La., for plaintiff.

William V. Renaudin, Jr., New Orleans, La., for intervenor, Liberty Mutual Insurance Co.

H. F. Foster, III, New Orleans, La., for defendants.

CASSIBRY, District Judge:

Plaintiff, Michael Karavokiros, a citizen of Ohio, was employed by J & N Industrial Painting, a corporation with its principal place of business in Florida, to work as a flagman for work J & N was performing on the Chef Mentuer Bridge. While working as a flagman, Karavokiros was struck by a bus owned by defendant, Indiana Motor Bus Company and driven by defendant, Charles Blankenship. The bus was passing through Louisiana as part of a chartered tour of the South and at the time of the accident was heading from New Orleans to Mississippi. Plaintiff brought this suit against Indiana Motor Bus Company and Blankenship, charging negligence against both defendants and negligent entrustment against Indiana Motor Bus. The negligent entrustment count is based on plaintiff's assertion that Indiana Motor Bus was aware of Blankenship's alleged poor driving record and nevertheless permitted him to drive the bus.

Plaintiff brings this motion seeking the court to apply Ohio or Indiana law as to

punitive damages. Both Indiana and Ohio law provide for punitive damages in torts cases in the case of gross negligence or wanton and willful conduct. Louisiana law does not permit punitive damages in torts cases. Defendant, in turn, brings this motion to strike the plaintiff's punitive damage claim because Louisiana law should apply to the case.

■ Traditionally, *lex loci delicti*, the law of the place of injury applied to choice of law questions for torts cases. However, in *Jagers v. Royal Indemnity Co.*, 276 So.2d 309 (La.1973), the Louisiana Supreme Court moved toward an "interest approach" spelled out in the Second Restatement of Conflicts. That approach requires a court to weigh the various interests of each state with the litigation and determine which state has "the most significant interest" in having its law applied to the case. The approach is spelled out in Section 6 of the Second Restatement:

6. Choice-of-Law Principles

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Subsequent courts interpreting Louisiana conflicts law have determined that there are actually two separate tests in deciding under the Restatement approach which states' law applies: (1) to determine wheth-er there is a "true" or "false" conflict of laws issue in the case and (2) to apply the principles of the Second Restatement to determine which of the competing interests ought to apply. *Lee v. Hunt*, 631 F.2d 1171 (5th Cir. 1980), *Ardoyno v. Kyzar*, 426 F.Supp. 78 (E.D.La.1976).

■ A "false" conflict exists where one state has *no* interest in seeing that its laws are applied to the case "other than the mere concern of a forum that its rules of trial administration be followed." *Brinkley & West, Inc. v. Foremost Insurance Company*, 499 F.2d 928, 932 (5th Cir. 1974). In such a case, the law of the state with the true interest in the outcome of the issue is applied. Plaintiff argues that this is a case of a false conflict because Louisiana has no interest in the application of its bar to punitive damages. He reasons that the only justification for a bar to punitive damages is to protect Louisiana domiciliaries from large damage awards and in this case, since the defendants are both from out of state, Louisiana has no interest in preventing a punitive damage award.

■ Plaintiff's interest analysis is too narrow. In *Ardoyno v. Kyzar, supra*, the court articulated another legitimate reason that a state may have in not permitting punitive damages. In *Ardoyno*, the plaintiff, a Louisiana lawyer, sued a Mississippi lawyer for slander which allegedly occurred in Mississippi. The plaintiff sought the application of Mississippi law, which provided punitive damages, and argued, like plaintiff in this case, that Louisiana had no interest in applying its punitive damage law. The court rejected this contention, stating:

Louisiana has an interest in avoiding speculative punitive damages in slander cases. If this interest is restricted to avoiding speculative damages against Louisiana domiciliaries, it would not be frustrated by applying Mississippi law in this case, and a false conflict would exist. We shall assume, however, that Louisiana's interest is in protecting the integrity of its judicial system, rather than domestic defendants, from what it might consider inherently speculative awards.

Having discerned an interest of both Mississippi and Louisiana in having their law applied, we turn to the principles of the Second Restatement to resolve the conflict. Id. at 83.

Punitive damages are intended to punish behavior, not to compensate the plaintiff. Restatement (Second) of Torts, § 908 (1965). A state may decide that the benefits in regulating behavior by imposing punitive damages are outweighed by the danger of speculative jury awards. That conclusion is a legitimate interest which a state may assert in administering its judicial system.

Plaintiff, in attempting to show that punitive damages are not per se violative of public policy in Louisiana cites a number of Louisiana statutes which award punitive damages. See, e. g., La.Rev.Stat. § 22:657 (penalty of double the amount of health and accident benefits claimed by insured); La. Rev.Stat. § 22:658 (penalty of 12% of damages); La.Rev.Stat. § 23:632 (payment of additional penalty wages up to 90 days). However, in each of those statutes the penalty is defined in terms of a specific sum. The statutes therefore reinforce the perception that Louisiana does not favor speculative punitive damage awards.[1]

■ Since there is a legitimate or "true" conflict of laws in this case, I must determine which state has the most important interest in applying its law. For example, in *Ardoyno* the court concluded that Mississippi punitive damage law should apply because Section 149 of the Second Restatement provides that in general the law of the place of publication of the slander (Mississippi) should apply unless the principles set out in § 6 of the Second Restatement dictated otherwise. The court concluded that the principles set out in § 6 were in accord with the result suggested by § 145 and therefore Mississippi law applied.

Section 145 of the Restatement provides the factors the courts should look at in determining choice of law provisions in *tort* cases:

§ 145. The General Principle

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

---

[1]. Plaintiff also contends that Louisiana's prohibition of punitive damages has nothing to do with preventing speculative damages; instead, he argues, it is solely concerned with preventing the element of revenge or punishment to enter into damage awards. See Louisiana Civil Law Treatise, Vol. 2, Tort Doctrine, Ferdinand F. Stone, § 12, p. 22: "Louisiana unlike common law does not award punitive or exemplary damages; as such savor more of punishment at criminal law than of reparation."

However, it is not clear why the aim of eliminating the penal sanction from civil cases and a concern for preventing speculative damage awards are mutually inconsistent. Moreover, even if such were the case, Louisiana's interest in avoiding punitive damages as a means of punishment is not necessarily designed only to protect defendants. A state may have a legitimate interest in preventing the element of criminal punishment from entering into civil cases. Like the state's interest in avoiding speculative damage awards, this interest also concerns a state's ability to preserve the integrity of its judicial system. That interest has traditionally been respected in Conflict of Law analysis. See Restatement (First) of Conflict of Laws § 611 (1934) (No action to recover a penalty the right to which is given by another state); Restatement (Second) of Conflict of Laws, § 89 (1971).

However, even if, as plaintiff contends, states that bar punitive damages are only concerned with protecting defendants, there is no reason to believe that Louisiana would necessarily only protect Louisiana *domiciliaries.* Louisiana would also have a legitimate interest in protecting those defendants who do business in Louisiana, which in this case would probably include Indiana Motor Bus Company. See B. Currie, Selected Essays on the Conflict of Laws, 704–05 (1963).

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Application of the four factors listed above does not reveal any clear answer in this case. The accident and injuries occurred in Louisiana. The alleged negligent conduct occurred in two places. The driver's alleged negligence obviously occurred in Louisiana. However, the plaintiff also charges that Indiana Motor Bus was negligent in entrusting the bus to the driver and that the negligence occurred in Indiana. As far as domicile is concerned, plaintiff is a resident of Ohio. Indiana Motor Bus is an Indiana corporation. The domicile of Blankenship, the driver, is disputed. Plaintiff claims that Blankenship's domicile is Indiana, while defendant claims that it is Illinois. While this question is unclear, its resolution will not resolve this question.

However, another Restatement provision does provide more specific guidance for this issue. Section 146 of the Restatement provides:

In an action for personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Moreover, comment (d) under Section 145 states:

Experience and analysis have shown that certain issues that recur in tort cases are most significantly related to states with which they have particular connec-

tions or contacts. So, for example, a state has an obvious interest in regulating the conduct of persons within its territory and in providing redress for injuries that occurred there. Thus, subject only to rare exceptions, the local law of the state where conduct and injury occurred will be applied to determine whether the actor satisfied minimum standards of acceptable conduct and whether the interest affected by the actor's conduct was entitled to legal protection.

Both of these statements indicate that the state where the place of injury occurred is usually the state whose law should be applied since that state has an interest in regulating the conduct of persons within its borders. Plaintiff responds that the court in *Jagers v. Royal Indemnity Company, supra*, did not apply the law of the place of injury. In *Jagers*, the Louisiana Supreme Court applied Louisiana law to an auto accident which occurred in Mississippi between two Louisiana domiciliaries. However, in *Jagers*, the disputed issue in the case was whether Louisiana or Mississippi law applied to intra-family tort suits (Louisiana permitted such suits, Mississippi did not). Both the Second Restatement and other commentators have indicated that the law of the place of domicile of the parties should control the question of intra-family immunity, since that state has the chief interest in regulating intra-family relations.[2]

In this case, however, the issue at stake directly relates to Louisiana's recognized interest in regulating the conduct of parties within its borders. As indicated above, punitive damages are *exclusively* concerned with controlling conduct through deterrence. Nor does this Court agree with

---

2. Restatement (Second), *supra*, § 145, comment (d) at 418:

On the other hand, the local law of the state where the parties are domiciled, rather than the local law of the state of conduct and injury, may be applied to determine whether one party is immune from tort liability to the other or may be held liable to the other only for injuries resulting from intentional conduct or from some aggravated form of negli-

gence, or conversely, whether one party owes the other a higher standard of care than would be required in the circumstances of the case by the local law of the state where conduct and injury occurred. An example is the issue of intra-family immunity, which, as stated in § 169, is usually determined by the local law of the state of the spouse's common domicile.

plaintiff's characterization of the place of injury as fortuitous.[3] This is not a case where two parties with no connection with Louisiana whatsoever, happened to become involved in an accident. Plaintiff was in Louisiana as part of a work crew on a construction job in the state. Defendant's bus was operated in Louisiana as part of a chartered tour. Thus, Louisiana has more than a fortuitous interest in both parties.

In sum, application of the two-part test set out in *Brinkley v. West, supra,* leads to the conclusion that Louisiana has a legitimate interest in the application of its prohibition against punitive damages and that Louisiana's "contacts" with the accident mandate the application of its policy prohibiting the award of punitive damages. The injury occurred in Louisiana. Louisiana generally has an interest in protecting those working within its borders. The alleged negligent driving occurred in Louisiana. Louisiana certainly has an interest in discouraging such conduct within its borders. Finally, while the alleged negligent entrustment did not occur in Louisiana, Louisiana has an interest in discouraging a bus company from hiring incompetent drivers who will routinely pass through Louisiana. Yet, despite its interest in controlling the conduct of the parties, Louisiana has apparently concluded that the need for regulating such behavior does not require the use of

punitive damages, especially in view of the attendant danger associated with the use of such damages. Under the circumstances set out above, I believe that the State's judgment must be respected.[4]

3. Restatement (Second), *supra,* § 145, comment (e) at 420:

> Situations do arise, however, where the place of injury will not play an important role in the selection of the state of the applicable law. This will be so, for example, when the place of injury can be said to be fortuitous or when for other reasons it bears little relation to the occurrence and the parties with respect to the particular issue.

4. This court's conclusion is similar to that reached in *Commercial Union Insurance Co. v. Upjohn Co.,* 409 F.Supp. 453 (W.D.La.1976). In *Commercial Union,* the plaintiff, a subrogated insurer on a fire damage claim, filed a products liability action against defendant, Upjohn, on the grounds that an insulation material manufactured by Upjohn and used in the building damaged materially aided the spread of the fire. Defendant moved to strike the plaintiff's claims for punitive damages. The court found that Louisiana's long standing policy against

punitive damages gave it a legitimate interest in applying its law. It then concluded that under Restatement (Second) § 147, the law of the place of injury should control in the case of injury to land or some other tangible thing. The court rejected the application of any competing interest, stating:

> We hold, therefore, that where Louisiana has a significant relationship to a tort action, together with a well-reasoned, long-standing rule of law relevant to public policy, the party who would have us derogate from Louisiana law to that of another state must bear the burden of proving a significant relationship and interest in the foreign state so compelling as to transcend Louisiana's interest in application of its substantive law. Indeed this burden may be insurmountable; but we reason that this conclusion fosters ease in determination and application of the law, together with furtherance of the relevant policies of the forum state. *Id.* at 459.