631 So.2d 1189 (1994)
Bill HANKS, et al.
v.
SHELL OIL CO.
No. 93-CA-737.
Court of Appeal of Louisiana, Fifth Circuit.
January 25, 1994.
*1190 Robert McCall, William B. Baggett, Lake Charles, Edward Lassus, Jr., New Orleans, for Bill Hanks.
Charles Raymond, New Orleans, for Shell Oil Co.
Richard Edrington, LaPlace, for Valley Systems, Inc.
Before KLIEBERT, BOWES and CANNELLA, JJ.
BOWES, Judge.
This is a suit for damages. Plaintiffs and third-party intervenors have both appealed from the grant of a motion for summary judgment filed by defendant, Shell Oil Company, dismissing plaintiffs' action. We affirm.
Plaintiffs, Bill Hanks, et al. filed suit on January 7, 1991 against defendant, Shell Oil Company. Plaintiff received injuries on January 23, 1990 when he was hit by scalding water and burned while working at the Shell Oil Company's Norco facility. At the time of the injury, Bill Hanks was employed by Valley Systems, Inc. as a gunman/crew leader in training of an ultra hydro blasting crew sent to the Norco facility pursuant to a contractual agreement between Shell Oil Company and Valley Systems, Inc. for the high pressure blast cleaning of tube bundles in the Norco facility.
Lumbermen's Mutual Insurance Company, the worker's compensation insurer for Valley Systems, Inc., filed a petition for intervention, seeking reimbursement of compensation monies paid by them to Bill Hanks. Shell Oil Company filed a third-party demand against Valley Systems under a contractual indemnity clause.
On December 21, 1992, Shell Oil Company filed a motion for summary judgment alleging that it was a statutory employer of Bill Hanks and was therefore immune from suit. After hearing, the trial court granted Shell Oil Company's motion and dismissed plaintiff's suit with prejudice.
Both Lumbermen's and Hanks have appealed this judgment.
There are two issues presented for review herein:
(1) Did the trial court err in applying Louisiana law instead of the law of the State of Texas? and (2) Did the trial court err in ruling that, as a matter of law, Shell Oil Company was immune from suit?

ISSUE NUMBER ONECHOICE OF LAW
In his oral reasons for judgment, the trial judge held that the laws of the State of Louisiana were applicable to this suit. In doing so, the judge stated:
The Court finds that the law of Louisiana is the law that should be applicable with respect to the tort action that was brought. And I think in this particular contract, I read a particular paragraph that said that the contractThe agreement shall be construed and the rights of buyer and seller shall be determined with respect with both interpretation of this agreement and its performance according to the laws of the State of Louisiana. There's no question but that an employer in the State of Louisiana has the right to rely upon the laws of the state where it's actually conducting business. And the mere fact that this claimant, by virtue of insurance contracts, had the right to claim compensation under Texas laws does not mean that Louisiana laws are not applicable in this case. So I see no conflict of interest or conflict of laws problem in this case at all. It would be curious to me and just crossed my mind, if that be the case, whether or not in states where we have punitive damages, whether claimants could elect if they had a particular right to elect laws under that particular state and have that applied to employees in the state of Louisiana where we don't have punitive *1191 damages, in certain instances. So that's not a problem with this particular Court. I find that there's no conflict of laws problem; that the law of Louisiana where the accident occurred, where the work was being performed, is the law that is applicable.
We find no error in this determination.
The contract between Shell Oil and Valley Systems provides the choice of law. Paragraph XVI states:
This agreement shall be construed and the rights of buyer and seller shall be determined (with respect to both interpretation of this agreement and its performance) according to the laws of the State of Louisiana.
The Blanket Order executed in conjunction with the contract states:
This blanket purchase order RNAB/ONB 1437 is issued between Shell Oil Company (herein referred to as buyer) and Valley Systems (herein referred to as seller) to cover the requirements of the Norco Refinery and Chemical Plant for ultra high pressure cleaning.
In Whitehurst v. James Noel Flying Services, 509 So.2d 1035, 1037 (La.App. 3 Cir. 1987), the court said:
It is well established that where the parties stipulate the state law governing the contract, Louisiana conflict of laws principles require that the stipulation be given effect, unless there is statutory or jurisprudential law to the contrary or strong public policy considerations justifying the refusal to honor the contract as written. American Standard Leasing v. Plant Specialties, 427 So.2d 555 (La.App. 3 Cir.1983); Associated Press v. Toledo Investments, Inc., 389 So.2d 752 (La.App. 3 Cir.1980). A choice of law provision in a contract is presumed valid until it is proved invalid. The party seeking to prove such a provision is invalid bears the burden of proof. Delhomme Industries, Inc. v. Houston Beechcraft, 669 F.2d 1049 (5th Cir.1982).
In this case, appellants have made no showing that the stipulation that Louisiana law is invalid due to an express legislative or constitutional prohibition, or a showing that the purpose of the contract between Shell Oil and Valley Systems contravenes social morals or public interest. Accordingly, the trial court did not err in holding that Louisiana law applies to this case.
Assuming arguendo that no contractual provision existed, an application of choice of law principles reflects that the trial judge did not err.
The development of jurisprudence relative to the application of choice of law was described by the First Circuit in Brown v. DSI Transports, Inc., 496 So.2d 478, 481 (La.App. 1 Cir.1986):
Louisiana has rejected the traditional rule of lex loci delecti. In Jagers v. Royal Indemnity Company, 276 So.2d 309 (La. 1973), instead of deciding that the law of the state in which the tort occurred would apply, the court concluded that an interest analysis was the more appropriate method of choosing which law applied. Jagers presented a false conflict of laws in that only one state (Louisiana) had an interest in the application of its laws. Cases following Jagers have adopted an interest analysis when faced with a genuine conflict of laws. Burns v. Holiday Travel, Inc., 459 So.2d 666 (La.App. 4th Cir.1984); Lee v. Ford Motor Company, 457 So.2d 193 (La.App. 2d Cir.1984), writ denied, 461 So.2d 319 (La.1984); Champion v. Panel Era Manufacturing Company, 410 So.2d 1230 (La.App. 3rd Cir.1982), writ denied, 414 So.2d 389 (La.1982). The threshold inquiry is whether at least two states have an interest in the matter; if so, the court must undertake an interest analysis to determine which state has the more significant relationship to the occurrence and the parties. Lee, 457 So.2d at 194-5.
The Restatement (Second) of Conflict of Laws (1969) (hereafter Restatement) has been used as the guide in resolving choiceof-law questions. Jagers, 276 So.2d at 312; Burns, 459 So.2d at 668. See also Brinkley & West, Inc. v. Foremost Insurance Company, 499 F.2d 928 (5th Cir.1974). The Restatement sets out these guidelines for tort cases:
Sec. 145. The General Principle *1192 (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in Sec. 6.
(2) Contacts to be taken into account in applying the principles of Sec. 6 to determine the law applicable to an issue include:
(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil (sic), residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.
Appellants argue that Texas law should apply because the injured party was a resident of Texas, his employer was a Texas Company, the majority of his medical treatment was rendered in Texas and that we received worker compensation benefits in Texas. However, the accident occurred in Louisiana, the injured party was under Louisiana employment and supervision, his physical employment was located at Norco, Louisiana and he was under supervision of Valley Systems Baton Rouge adjunct of Valley Systems and his initial and emergency medical treatment occurred in Louisiana.
Accordingly, we conclude that the interests of the State of Louisiana outweigh the interests of Texas and therefore, Louisiana law is applicable to the instant case.

ISSUE NUMBER TWOSUMMARY JUDGMENT
A motion for summary judgment is appropriately granted only when the pleadings, depositions, answers to interrogatories, admission on file and affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966. A motion for summary judgment is not a substitute for trial, and all doubts are resolved against the granting of the judgment and in favor of a trial on the merits. Only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law based on the facts presented to the court is a summary judgment warranted. Loeffler v. Poche, 576 So.2d 1211 (La.App. 5 Cir.1991), writ denied, 580 So.2d 384 (La. 1991).
The mover bears the burden of establishing that there are no genuine issues of material fact. "A `fact' is material if its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. Facts are `material' if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. Panalber v. Blount, 550 So.2d 577, 583 (La. 1989).
LSA-R.S. 23:1032 provides in pertinent part that:
A. (1)(a) The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease.
(b) This exclusive remedy is exclusive of all claims, including any claims that might arise against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal under any dual capacity thereof or doctrine.
(2) For purposes of this Section, the word `principal' shall be defined as any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.
*1193 If Shell is considered the statutory employer of Valley Systems, Inc. and of Bill Hanks, and thus is a "principal," then it is immune from tort liability.
Both Lumbermens and plaintiffs argue that there are material issues as to whether Shell is to be considered a statutory employer within the scope of LSA-R.S. 23:1061 as defined by the Louisiana Supreme Court in Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986).
Appellants further contend that the trial court erred in ruling that the 1989 amendment to LSA-R.S. 23:1061 was a legislative overruling of Berry v. Holston, supra.
The Berry case set forth a three prong test to determine the existence of a statutory employment relationship. As the court explained in Bowens v. General Motors Corp., 608 So.2d 999, 1002 (La.1992):
In Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986), we set forth a three tier analysis to determine the existence of a statutory employment relationship. The first level focused on whether the contract work is specialized or nonspecialized. If the work is specialized per se, the work cannot be part of the principal's trade, business or occupation. If the work is non-specialized, `the inquiry shifts to a comparison of the principal's trade, business or occupation and the contract work to see if the latter can be considered a part of the principal's trade, business or occupation.' Id. at 938. The Berry court set out three guidelines in this area: (1) is the contract work routine and customary; (2) does the principal have the equipment and/or manpower capable of performing the contract work; (3) what is the practice in the industry relative to the contract work. Finally, the court must determine if the principal was engaged in the work at the time of the alleged accident.
After the Supreme Court's pronouncement in Berry, supra, in 1989, LSA-R.S. 23:1061 was amended by the Louisiana legislature to provide:
A. When any person, in this Section referred to as the `principal', undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person, in this Section referred to as the `contractor', for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed. The fact that work is specialized or nonspecialized, is extraordinary construction or simple maintenance, is work that is usually done by contract or by the principal's direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered part of the principal's trade, business, or occupation, regardless of whether the principal has the equipment or manpower capable of performing the work. [Emphasis supplied].
B. When the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor.
The emphasized portion of the above statute is primarily the portion that appellees contend was the reaction of the legislature to legislatively overrule the holding in the Berry case.
The amendment became effective January 1, 1990. Appellants argue that the 1989 amendment does not legislatively overrule Berry, supra, and that the three-prong test to determine statutory employer relationships is still viable.
*1194 We disagree. Instead, we agree with our brethren of the First, Third and Fourth Circuits and of the U.S. Fifth Circuit who have determined that "the amendment [to LSA-R.S. 23:1061] legislatively overruled Berry. It broadened the reach of the statutory employment language, creating a more liberal standard of tort immunity." Hutchins v. Hill Petroleum Co., 609 So.2d 312, 315 (La. App. 3 Cir.1992). See also Frith v. American Motorists Ins. Co., 613 So.2d 249 (La. App. 1 Cir.1992), writ denied, 617 So.2d 932 (La.1992); Carter v. Chevron Chemical Co., 593 So.2d 942 (La.App. 4 Cir.1992); Becker v. Chevron Chemical Co., 983 F.2d 44 (5th Cir. 1993); Salsbury v. Hood, 982 F.2d 912 (5th Cir.1993).
In concluding that the 1989 amendment to LSA-R.S. 23:1061 overruled the Berry case, the court in Salsbury noted:
The amendment tracks the language in the first two levels of the Berry analysis and specifically rejects each of the factors listed in those two levels. The amendment, however, does not specifically track and reject the third level, which inquires whether the principal was actually engaged in the contract work at the time of the contract employee's injury. We, nevertheless, believe that the amendment implicitly repudiates this third level by stating that a principal can be considered a statutory employer `regardless of whether the principal has the equipment or manpower capable of performing the work.' Therefore, the amendment repudiates all three parts of the Berry analysis.
Salsbury, 982 F.2d at 915 (footnote omitted).
By the amendment to LSA-R.S. 23:1061, the Louisiana legislature chose to return to a more liberal standard for principal tort immunity first enunciated in Thibodaux v. Sun Oil Co., 218 La. 453, 49 So.2d 852 (La.1950). Under that standard, a statutory employer/employee relationship exists whenever the work performed by the employee is "integrally related" to the principal's business. Salsbury v. Hood Industries, Inc., supra; Duhon v. Conoco, 795 F.Supp. 189 (W.D.La.1992).
It is undisputed that Hanks was cleaning "tube bundles" which was part of Shell's routine maintenance when the accident occurred. In Boudreaux v. Freeport Chemical Company, 576 So.2d 615 (La.App. 4 Cir.1991), the court noted that routine maintenance is essential to, and is, therefore, a part of the principal's trade business or occupation. We agree.
Accordingly, we conclude that the trial court did not err in holding that, as a matter of law, Shell Oil was the statutory employer of Bill Hanks and is therefore immune from suit.
In its appellate brief, Lumbermens' Mutual also argues that Shell waived its right to raise the statutory employer defense, by the inclusion of the following paragraph in the contract between Shell and Valley Systems, Inc.:
XV. Independent Contractor Status

Seller shall be an independent contractor and neither seller nor anyone employed by seller shall be deemed for any purpose to be the employee, (emphasis added) agent, servant, or representative of buyer in the performance of the work aforementioned. Buyer shall have no direction or control of seller or seller's employees and agents, except in the results to be obtained.
In Graves v. Lou Ana Foods, Inc., 604 So.2d 150 (La.App. 3 Cir.1992), the court held that in order for the employer to waive the exclusive worker's compensation remedies available to it as an employer, even as to a waiver in favor of a third party, the evidence must show that the employer knowingly waived such tort immunity.
Furthermore, we note that under LSA-R.S. 23:1033 an employer cannot contractually shield himself from the obligation to provide worker's compensation coverage. See also Locker v. Wilson, 536 So.2d 441 (La. App. 2 Cir.1988).
In this case, there is no allegation whatsoever and therefore no factual issue, that Shell, by the inclusion of the above cited clause, specifically intended to waive its right to claim tort immunity.
*1195 Therefore, we find that the trial court did not err in ruling that Shell, as the statutory employer of Bill Hanks, was immune from suit and was entitled to summary judgment as a matter of law.
Accordingly, for the above discussed reasons, the judgment of the trial court is affirmed. All costs of this appeal are divided equally between appellants, Bill Hanks, et al. and Lumbermen's Mutual.
AFFIRMED.