| iPETERS, Judge.
The issue in this appeal is whether the trial court erred in granting summary judgment dismissing John Preston Byrom and Kathleen Breaux Byrom’s tort suit against the City of Lafayette (City). The trial court granted summary judgment on the basis that the City was the statutory employer of Mr. Byrom so that Mr. Byrom was limited to workers’ compensation recovery. The By-roms appeal this judgment.
DISCUSSION OF THE RECORD
The City of Lafayette through its Department of Utilities Systems, or Lafayette Utilities Systems (LUS), is involved in constructing and maintaining electrical lines and distribution systems to provide electricity to customers located throughout the City. On March 31, 1990, LUS entered into a customer acquisition agreement whereby it acquired certain Southwest Louisiana Electric Membership Corporation (SLEMCO) customers and agreed to provide electrical service to those customers. In order to fulfill this obligation, LUS accepted a bid by Ernest P. Breaux Electrical, Inc. (Breaux) for a construction project in 1992 entitled “Installation of a Conduit System |2for 13.8 KV Underground Primaries Along Johnston Street.” Breaux’s obligation under the contract included enlarging three existing concrete electrical cabinet pads and installing two additional concrete pads, two pole risers, two hundred feet of four-inch PVC conduit, and fifteen feet of two-inch PVC conduit at the intersection of Johnston and Driftwood Streets. Additionally, Breaux was to secure the electrical cabinets or fuse boxes to the pads. Mr. Byrom was employed by Breaux as an electrical foreman. On March 24, 1992, Mr. Byrom was securing an electrical cabinet to a pad when he sustained injury.
The Byroms filed this tort suit against the City and Maltón Equipment Company, the alleged manufacturer of the cabinet. The Byroms allege that Mr. Byrom sustained serious burns when the electrical service in the cabinet arced while he was drilling holes for the anchor bolts. Subsequently, Maltón Equipment Company was dismissed from the litigation without prejudice.
The Byroms alleged negligence and strict liability theories of recovery against the City. The City filed a motion for summary judgment, asserting that it was immune from tort liability on the basis of statutory employer status. In support of the motion, the City presented the affidavit of Frank Ledoux, its engineering manager. Ledoux asserted that pursuant to legislative authority as well as the Lafayette Home Rule Charter, on a regular basis, LUS constructs and maintains electrical lines and distribution systems to provide electricity to customers throughout Lafayette. He also asserted that as a regular and normal part of this business, additional customer acquisitions occur and that the construction job in 1992 was directly related to LUS’s obligations under the acquisition agreement.
The City also presented the affidavit of Matt Broussard, the project engineer for the 1992 construction job. According to Brous-sard, this particular job involved connecting certain SLEMCO customers to LUS’s existing main electrical underground Igline along Johnston Street. He stated that in order to provide service to these customers at the same level of performance as provided to other LUS customers, certain work was required, including enlarging several existing concrete pads, on which were located metal electrical cabinets housing electrical equipment, and replacing existing electrical cabinets with larger cabinets with fusing capa *1023 bilities. According to Broussard, due to a desire not to tie up LUS crews and to have them available to respond to City needs, a portion of the work was let for bids. Brous-sard also asserted that LUS crews had the capacity, skill, and equipment necessary to perform all of the work with its own employees and that LUS crews had in the past on many occasions constructed and enlarged pads and secured electrical cabinets and equipment on the pads. Specifically, he personally recalled or was aware of numerous occasions when such work was performed solely by LUS crews, including, but not limited to, one time in 1984, two times in 1989, and three times in 1991.
According to an exhibit attached to Brous-sard’s affidavit, under the contract, Breaux was to provide the labor and materials necessary to enlarge existing cabinet pads and to install feed-thru cabinet pads; all trenching, backfilling, labor, and materials necessary to install PVC’s; and all labor and materials necessary to install limestone over the trench and pipe barriers. Breaux was required to do all work as per City policies, specifications, and details. Additionally, Breaux was required to pull strings required in all conduits and mechanically tamp in six-inch layers of all disturbed earth beneath the cabinet pads. LUS crews’ work included replacing existing feed-thru cabinets with fused cabinets, installing feed-thru cabinets on existing pads, installing cables, energizing transformers, and making connections. At the time of the accident, Mr. Byrom was anchoring the cabinet to the cabinet pad.
The Byroms presented evidence which included excerpts from depositions of Ledoux and Broussard concerning the City’s experience in projects involving concrete. 14Additionally, other deposition excerpts developed the issue of whether Byrom requested that the cabinet where he was injured be de-energized before he began working.
The trial court granted the motion for summary judgment. In oral reasons for judgment, the court stated in part:
Well, an electrician can be an electrician even though he’s not holding a wire at a particular point during his function. The Court finds that the City of Lafayette is in the business, trade, or occupation of supplying electrical service to its customers, and, therefore, that would involve the type of work that Mr. Byrom was doing.
The Byroms appeal.
OPINION
La.R.S. 23:1061(A) provides:
When any person, in this Section referred to as the “principal”, undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person, in this Section referred to as the “contractor”, for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be hable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been hable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the apphcation of this Chapter reference to the principal shah be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed. The fact that work is specialized or nonspecial-ized, is extraordinary construction or simple maintenance, is work that is usually done by contract or by the principal’s direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered part of the principal’s trade, business, or occupation, regardless of whether the principal has the equipment or manpower capable of performing the work.
(Emphasis added).
The last sentence of this provision was added by Acts 1989, No. 454, § 3, effective January 1, 1990. In Trahan v. State, Through Department of Health & Hospitals., 95-320 (La.App. 3 Cir. 10/4/95); 663 So.2d 242, 245-46, this court ^observed the following:
*1024 The Louisiana Supreme Court has yet to interpret the meaning of the statute as amended as to whether the amendment is retroactive or whether the amendment broadened the definition of statutory employers and overruled the three-tier analysis of Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986). Nor does the amendment provide a clear standard concerning an appropriate test which is now to be used in determining statutory employment.
Several Louisiana appellate courts, including this court in Hutchins v. Hill Petroleum Company, 609 So.2d 312 (La.App. 3 Cir.1992), have suggested in dicta that the 1989 amendment overruled Berry and reinstated the integral relation test as set forth in Thibodaux v. Sun Oil Company, 218 La. 453, 49 So.2d 852 (1950), thus returning to a more liberal standard for granting principals tort immunity....
In three recent decisions, appellate courts have applied the integral relation test on motions for summary judgment in determining whether a principal was a statutory employer. See Picard v. Zeit Exploration Co., Inc., 92-2242 (La.App. 1 Cir. 3/11/94), 636 So.2d 922, writ granted and judgment set aside, 94-1555 (La.9/30/94), 642 So.2d 862; Moore v. Crystal Oil Company, 626 So.2d 792 (La.App. 2 Cir.1993), writ granted and judgment reversed, 93-3103 (La.2/25/94), 632 So.2d 758; Hanks v. Shell Oil Company, 93-737 (La.App. 5 Cir. 1/25/94), 631 So.2d 1189, writ granted and judgment set aside, 94-0483 (La.4/4/94), 635 So.2d 1118. However, the supreme court has been very reluctant to determine whether an employee is engaged in the trade, business, or occupation of the principal, and therefore, whether statutory employment exists in a motion for summary judgment. As such, in each of these three cases, the supreme court has reversed the grants of summary judgment on this particular issue.
Even though the supreme court granted writs in Picard, Moore, and Hanks, it left unresolved the question of what test to apply as a result of the amendment to La.R.S. 23:1061(A).
This question is no longer unresolved. In Kirkland v. Riverwood International USA, Inc., 95-1830 (La.9/13/96); 681 So.2d 329, the supreme court affirmed the second circuit’s conclusion that the present standard for determining statutory employer status is the “totality of the circumstances” test. The second circuit had found questionable whether the integral relation test is the appropriate standard for assessing statutory employment. Kirkland v. Riverwood Int’l USA, Inc., 26,741 (La.App. 2 Cir. 6/21/95); 658 So.2d 715, writ granted, 95-1830 (La.11/3/95); 661 6So.2d 1370. It found that the amendment to La.R.S. 23:1061 was clearly designed to do away with the test set forth in Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986), but it was not convinced that the amendment was intended to do away with the fact-based inquiry used immediately pri- or to the Berry decision. The second circuit concluded that the amendment marked a return to the pre-Berry analysis of the totality of the circumstances. The supreme court agreed with that analysis and stated:
We therefore hold that the appropriate standard under the amended Section 1061 for determining whether the contract work is part of the alleged principal’s trade, business or occupation is for the court to consider all pertinent factors under the totality of the circumstances. The presence or absence of any one factor is not determinative, and the presence of one factor may compensate for the lack of another. Among those factors to be considered in determining whether a statutory employment relationship exists are the following:
(1) The nature of the business of the alleged principal;
(2) Whether the work was specialized or non-specialized;
(3) Whether the contract work was routine, customary, ordinary or usual;
(4) Whether the alleged principal customarily used his own employees to perform the work, or whether he contracted out all or most of such work;
*1025 (5) Whether the alleged principal had the equipment and personnel capable of performing the contract work;
(6) Whether those in similar businesses normally contract out this type of work or whether they have their own employees perform the work;
(7) Whether the direct employer of the claimant was an independent business enterprise who insured his own workers and included that cost in the contract; and
(8) Whether the principal was engaged in the contract work at the time of the incident.
Kirkland, 681 So.2d at 331 (footnote omitted).
In the case before us, we must apply the totality of the circumstances test, being mindful of the statement in Kirkland that such an inquiry is frequently difficult to |7accomplish on a motion for summary judgment. In doing so, we find that the trial court erred in granting the City’s motion for summary judgment since there exist genuine issues of material fact concerning whether enlarging cabinet pads and securing fuse boxes were part of the City’s trade, business, or occupation. The record contains no evidence indicating whether the work was specialized or non-speeialized. Additionally, although the City has performed work associated with some of the contemplated contract work, its supervisory personnel exhibited a lack of knowledge of the concrete portion of the work. Also, there is a question of fact as to whether the City had the equipment and personnel trained to pour concrete. There is also no evidence of the practice in the industry. Finally, there is a question of fact as to whether the City was engaged in similar work at the time of the accident.
DISPOSITION
For the foregoing reasons, we reverse the summary judgment granted by the trial court and remand the ease to the trial court for further proceedings consistent with the views expressed in this opinion. We assess costs of this appeal to the City, to the extent allowed by law.
REVERSED AND REMANDED.